*Counsel for Plaintiffs and Defendants*
*Listed on Signature Page*



IT IS SO ORDERED

Judge Claudia Wilken

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

CHUBA HUBBARD and KEIRA
MCCARRELL, on behalf of themselves and
all others similarly situated,

       Plaintiffs,

    v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION; ATLANTIC COAST
CONFERENCE; THE BIG TEN
CONFERENCE, INC.; THE BIG 12
CONFERENCE, INC.; PAC-12
CONFERENCE; and SOUTHEASTERN
CONFERENCE,

       Defendants.

Case No. 4:23-cv-01593-CW

**STIPULATED [PROPOSED] ORDER
REGARDING DISCOVERY OF
ELECTRONICALLY STORED
INFORMATION**

1.     **PURPOSE**

Unless otherwise agreed to by the parties, this Order will govern discovery of electronically stored information ("ESI") in this case, as well as any subsequently consolidated as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. Capitalized terms in this Order are defined in the attached Exhibit A.

2.     **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3.     **LIAISON**

The parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4.     **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. Given the nature and complexity of these actions, the parties agree to address methods to reduce the costs and burdens of preservation and to ensure proper ESI is preserved in response to particular discovery requests.

The following categories of ESI are not discoverable—and, to the extent that they exist, need not be retained, processed, reviewed, or produced—except upon a showing of good cause: (a) recorded voice messages, including voicemail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats; (b) instant messaging communications, including Skype communications, Zoom chats, and similar videoconferencing functions; (c) temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating

1

system; (d) common system and program files; (e) slack, fragmented, unallocated data, or data that no longer has a file marker on hard drives; (f) electronic mail sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere; (g) other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere; (h) logs of calls made from mobile devices; (i) Network Access Server Activity Logs; (j) data remaining from systems that are no longer in use, and that is unintelligible on systems in use; (k) Online Access Data such as temporary internet files, history, cache, cookies, etc.; and (l) data in metadata fields that are frequently updated automatically, such as last opened dates, (m) text, iMessage, or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices) and (n) back-ups or other long-term storage media (Backup and Archival Files) that were created strictly for use as data back-up or disaster recovery medium.

## 5. *House* DOCUMENTS

The Court has deemed produced in this litigation documents previously produced in *In re College Athlete NIL Litigation* (Case No. 20-CV-03919 CW) which include certain documents previously produced in discovery in *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litigation* (Case Nos. 4:14-md-2541-CW and 4:14-cv-2758-CW) and *In re Student-Athlete Name and Likeness Licensing Litigation* (Case Nos. C 09-1967-CW and C 09-3329-CW). Collectively, these previously produced documents are referred to herein as the "*House* documents." There is no requirement that any party reproduce the *House* documents in this case or provide additional or different information or metadata for those documents. The parties further agree that the privilege and/or redaction logs produced in connection with *House* suffice for purposes of the *House* documents.

## 6. SEARCH

The parties will cooperate in good faith regarding the disclosure and formulation of appropriate search terms and protocols used to search for ESI responsive to document requests served pursuant to Fed. R. Civ. P. 34. The parties shall meet and confer as early as possible to discuss, *inter alia*:

- Disclosure of search terms used to search for documents responsive to document requests,

including semantic synonyms. Semantic synonyms shall mean without limitation code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI, or information that may lead to the discovery of relevant ESI.

- Post-search error sampling and sampling/testing reports, if any.
- Potential use of computer-assisted review of predictive coding techniques.

The parties will meet and confer, prior to the application of search terms to find documents responsive to party document requests, and will review any search terms proposed and/or requested by the parties. The parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including any supplemental requests to add additional search terms based on supplemental document productions by either party. This ESI protocol does not impose upon any party an obligation to run supplemental searches, nor does it address or resolve any objection to the scope of the parties' respective discovery requests.

**7.     PRODUCTION FORMATS**

The parties agree that documents produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic form in the manner as described below. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents. In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

**a) Document Format.** Documents shall be produced according to the following formats:

i) Electronic Production of Paper Documents. Documents that are maintained in paper format shall be scanned per document and converted to a Static Image, and, except as otherwise provided below, shall be produced as black and white 1-bit TIFF images at 300 x 300 d.p.i. or greater resolution, in Group 4 compression single-page TIFFs and reflect the full and complete information contained in the original Document. Paper Documents shall be produced in black and white, except where

color is necessary to decipher the meaning, context, or content of the document. The Producing Party shall honor reasonable requests for either the production of the original Document for inspection and copying or production of a color image of the Document. Documents shall also be produced with the associated OCR, and with a load file, in accordance with paragraph 6(a)(iii), below. No Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the TIFF image; and the Receiving Party shall accept the OCR in its "as is" condition. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

ii) <u>Electronically Stored Information</u>. Except as provided in paragraph 6(a)(iv) below, Document images shall be generated from electronic Documents in a Group 4 compression single-page TIFF image that reflects the full and complete information contained on the original Document. All black and white images must be in TIFF image format and color documents, if applicable, must be in JPG image format, together with a Load File or functional equivalent specified in Paragraph 6(a)(iii) that contains the metadata as set forth in Paragraph 6(h), below, and Extracted Text or associated OCR or a link thereto. Files shall be imaged to show track changes, speaker notes, and user comments. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

iii) <u>File Structure</u>. Each production shall include the following unless otherwise agreed between the parties:

**a. Index File:**

- Each production has one index file, in .DAT file format
- The format of the DAT file shall use Western European (Windows) encoding.
- Standard Concordance delimiters shall be used
  - Comma — ASCII character 20 (¶)
  - Quote — ASCII character 254 (þ)

- o   Newline — ASCII character 174 (®)
- First line must contain the column/field names (set forth in paragraph 6(h) herein)
- The fields BEGINBATES, ENDBATES, TEXTPATH and NATIVELINK (where applicable) must be present
- Each subsequent row must contain the Metadata for one Document
- Every row must have the same number of columns/fields (empty values are acceptable)
- File shall be placed in the *DATA* subdirectory

**b. OCR and Extracted Text Files (.TXT Files):**

- A single text file for each Document containing all the Document's pages, in text.
- Filenames shall be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the Document, filenames shall not contain spaces
- Text must be encoded in Western European (Windows) format
- The TEXTPATH of the OCR or Extracted Text files shall be included as a field in the DAT file listed above
- Files shall be placed in the *TEXT* subdirectory

**c. Image Files:[1]**

- A single image for each page in each Document
- A single image per file (no multi-page image files)
- The default format shall be black and white single-page TIFF images and color JPG images, if applicable.
- Filenames shall be of the form: <Bates num>.<ext>, where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc.), filenames shall not

---

[1] Not required for documents produced in Native Format.

1          contain spaces

2          • Files shall be placed in the *IMAGES* subdirectory

3      **d.  Native Files:**

4          • Native files need only be produced for (a) Microsoft Excel files, (b)

5            Microsoft PowerPoint files, (c) audio files, (d) video files, and (e) other

6            files that the parties may agree shall be produced natively pursuant to

7            paragraph 6(a)(iv), below.

8          • Where Documents are produced in Native Format (pursuant to

9            paragraph 6(a)(iv) below) filenames must be unique in the production,

10           unless the content is identical; preferably by naming files by the starting

11           Bates number of the associated document

12         • The filename of a native file must retain the file extension

13           corresponding to the original Native Format; for example, an Excel

14           2003 spreadsheet's extension must be .xls

15         • Each native file filename must correspond to the NATIVELINK

16           metadata field in its corresponding document's row in the DAT file

17         • Where native files are produced pursuant to this subsection, it is

18           unnecessary to produce Image Files, such as TIFF images, other than the

19           bates stamped native placeholder with confidentiality designation (when

20           applicable) discussed below.

21         • Any native file text must be encoded in Western European (Windows)

22           format

23         • Native files shall be placed in the *NATIVES* subdirectory

24     iv) <u>Native Format Documents</u>.  The parties recognize that it may be appropriate

25     for certain Documents to be produced in Native Format. Therefore, the Producing

26     Party shall produce all .XLS spreadsheets, .PPT presentations, audio files, and video

27     files, and any files that cannot be imaged properly, in Native Format unless there is an

28     agreement to the contrary, with bates stamped native placeholder documents

representing native documents for purposes of document identification and confidentiality designations. The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation, such as database files. The parties will meet and confer regarding such requests.

If a Document to be produced as a Native Format contains privileged information as well as non-privileged information, it shall be produced in TIFF format with redactions rather than Native Format, except that Excel spreadsheets may be produced in Native Format with redactions. If redacting information causes formatting issues in any Document, the Producing Party and Requesting Party will meet and confer in good faith in an effort to resolve the issues.

To the extent the Producing Party wishes to establish additional procedures for the protection of confidential information as defined in any applicable Protective Order entered herein produced in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of the information in Native Format.

v) <u>Resolution of Production Issues</u>.  If Documents cannot be read because of imaging, software compatibility, or formatting problems, the Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

vi) <u>Support for Experts' Opinions</u>.  Unless a Document shall be produced in Native Format, Documents supporting the Producing Party's experts' opinions shall be produced as color PDF files or color JPG files where the original Document contains color and color is necessary to decipher the meaning, context or content of the document.

**b)  Production Media.**  A Producing Party shall produce Documents electronically, i.e. FTP or Share File, or on such readily accessible computer or electronic media as the

Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Information that shall be identified on the face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Protective Order entered in this case, if the media contains Confidential Information, as defined in the Protective Order. The face of the Production Media shall also contain the Bates Number range(s) of the Documents on the Production Media.  When produced electronically the same information may be provided in an accompanying email or letter. If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production or in a separate letter or email an explanation of how to decrypt the files. The parties agree to the following production formats: Electronically (i.e. SFTP or Share File site), CD, DVD or external USB hard drive, whichever results in the least number of items.

    **c) Production of Structured Data.**  To the extent a response to discovery requires production of discoverable electronic information contained in a Database which may contain potentially responsive information, in lieu of producing the Database, the parties shall meet and confer to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the Requesting Party or counsel.  As part of the meet and confer process, the Producing Party will, at a minimum, identify for the Requesting Party all data fields containing potentially responsive information in the Database and provide any data dictionary necessary to understand those fields.[2]  Upon review of the report(s), the Requesting Party may make reasonable requests for additional information to explain the Database scheme, codes, abbreviations, and different report formats or to request specific data from identified fields.

    If a Producing Party asserts that certain Database ESI is inaccessible or otherwise

---

[2] The parties are meeting and conferring about whether, if discovery requires production of discoverable electronic information contained in a Database, the Producing Party will identify for the Requesting Party *all* data fields in a Database which contains potential responsive information and provide any data dictionary necessary to understand those fields. If the parties cannot reach agreement on this issue, each reserves the right to ask the Court to resolve it.

unnecessary or inadvisable under the circumstances, or if the Requesting Party asserts that, following production, certain Database ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

**d) Document Unitization.**  Paper documents scanned into Document Images shall be logically unitized in a manner so as to maintain the document(s) and any attachments, as they existed in their original state, if possible. For electronic documents, the relationship of Documents in a Document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process from Native Format to TIFF, provided however that the Parties shall only be required to present one level of parent-child relationship. Document Images generated from attachments to e-mails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent e-mail. All hard copy Documents imaged and produced electronically shall include a unitization file ("load file") in accordance with paragraph 6(a)(iii)(a).

**e) Duplicates.**  The Producing Party may remove duplicate Documents pursuant to the following limitations: removal of duplicates shall only be done on exact duplicate Documents (based on MD5 or SHA-1 hash values at the Document level). As a general rule, a Producing Party may de-duplicate its production within a source (custodian), or across the entire production (cross-custodian/globally). With respect to hard copy documents for which metadata does not exist, however, a Producing Party may only de-duplicate within a source (e.g., custodian), provided however that if the Producing Party provides the custodian field for metadata as requested in Exhibit B it may de-duplicate across the entire production. If a Producing Party de-duplicates across the entire production (globally), the Producing Party shall provide both of the following: (1) name of each custodian possessing the de-duplicated copy (the All Custodians metadata fields); and (2) the original file path of each de-duplicated

copy (the All Paths metadata field). Where any such Documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. Nothing in this paragraph is intended to resolve a Producing Party's objections in written discovery requests on the ground that the request is duplicative because the requested Documents were produced or are being produced by other parties.

**f) Paper Documents Containing Fixed Notes.**  Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the Document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately.

**g) Bates Numbering and Other Unique Identifiers.**  Each Producing Party shall Bates number its production(s) as follows:

i) <u>Document Images</u>.  Each page of a produced Document—except Native Files—shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. The Bates Numbers shall be enumerated as defined in Exhibit A. The Producing Party will use a consistent prefix throughout the matter unless good reason exists for using a different prefix. No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, the Bates Number identified above, and any other internal tracking number that the Producing Party may choose to use. The confidentiality legend shall be "burned" onto a Document's image at a location that does not unreasonably obliterate or obscure any information from the source document.

ii) <u>Native Format Documents</u>.  In the event Native Format Documents are produced, in order to preserve the integrity of those Native Format Documents, no Bates Number, confidentiality legend or internal tracking number shall be added to the content of the Native Document unless otherwise agreed between the Producing Party

and the Receiving Party during any meet and confer related to confidentiality protections for Native Format Documents; however, the Producing Party will provide a MD5 Hash Value for each Native Format Document.

**h) Metadata.** The Producing Party shall produce the metadata information described in Exhibit B, if available, with each production and in the format described in Paragraph 6(a)(iii)(a) above. The Producing Party has no obligation or duty to fill in any metadata fields or create any metadata that is not present with the original file. The Producing Party also has no obligation or duty to recollect documents already collected in in response to discovery requests during the *House* litigation to fill in any metadata fields as long as the original collection was consistent with the ESI Protocol entered in the *House* litigation. For each Document, the Producing Party shall produce a line in the index file with the fields identified in Exhibit B, where available. The field naming conventions shall be as described in Exhibit B unless otherwise agreed and consistently applied across all productions.

**i) Compressed Files.** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**j) Email Threading.** Email thread suppression techniques may be applied to eliminate or withhold documents from production provided the use of such techniques are disclosed at the time of production and provided that the All Custodians and All Paths metadata for lesser inclusive emails that are within the Producing Party's agreed-to review population and suppressed from production are included in the metadata for the most inclusive emails that are produced. Additionally, all non-duplicate email attachments included in the lesser inclusive emails that are suppressed shall be produced.

**8.    PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer regarding the phasing of the production of ESI, should such phasing be appropriate.

**9.    OBJECTIONS TO ESI PRODUCTION**

If either party objects to producing requested information in the formats described herein on

the grounds that such information is not reasonably accessible because of undue burden or cost, before asserting such an objection, the Responding Party will inform the Requesting Party of any format in which it is willing to produce the requested data, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested form of production would impose an undue burden or is unreasonably costly, and afford the requesting party 10 business days from receipt of such notice to propose an alternative means of compliance with the request. Such proposal may include alternative cost estimates for ESI discovery production, may offer a proposal for ESI discovery cost allocation, or both.

The parties shall meet and confer in good faith to resolve any dispute regarding a proposed deviation from the provisions of this stipulation. To the extent the parties are unable to resolve any such dispute, each party reserves the right to seek judicial intervention in compliance with the relevant court rules and orders. Nothing in this Order negates the parties' ongoing obligations to report spoliation of evidence.

**10.   DOCUMENTS PROTECTED FROM DISCOVERY**

a)      For any document withheld in its entirety or produced but redacted on the basis of privilege or work product protections, the party withholding the document(s) (the "Withholding Party") will produce privilege/redaction logs consistent with the requirements of the Federal Rules of Civil Procedure.

b)      The logs shall be in Excel format or any other format that permits electronic sorting and searching, except that the parties shall have no obligation to log information either (i) generated on or after April 4, 2023, or (ii) involving privileged communications with outside counsel. When there is a chain of privileged e-mails, the Withholding Party need only include one entry for the top/most recent email on the privilege/redaction log for the entire e-mail chain and need not log each e-mail contained in the chain separately. For each document withheld or redacted, the Producing Party's privilege/redaction logs shall include the following information, where available: (a) custodian or source; (b) date; (c) author(s); (d) for documents produced but redacted on the ground of privilege, the starting and ending Bates number; (e) recipient(s), CC(s) and BCC(s) (for e-mail and hard-copy communication such as

letters and internal memoranda); (f) specification of the privilege claimed; and (g) a description of the document and the basis for the privilege or redaction claim. Privilege/redaction logs shall be produced within 45 days of the substantial completion of a party's production, or another time period mutually agreed to by the parties.

c)      Pursuant to Fed. R. Evid. 502(b), the disclosure of a communication or information covered by the attorney-client privilege or work-product doctrine does not operate as a waiver if (1) the disclosure is inadvertent; (2) the holder of the privilege or protection takes reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(b).

d)      All other issues of privilege, including the production of privileged or protected documents or information, shall be governed by the Protective Order entered by the Court in this litigation.

**11.     MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**12.     MISCELLANEOUS**

This Stipulated Order is not intended to govern any protections or restrictions related to the production of privileged litigation material. Any documents recalled due to a mutually agreed upon clawback provision shall have a specific protocol followed to ensure all copies of each such document are appropriately removed from the review system of the opposite party.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated:  November 9, 2023                    Respectfully Submitted,


**WILKINSON STEKLOFF LLP**                   **COOLEY LLP**

By: /s/ Rakesh N. Kilaru                      By: /s/ Whitty Somvichian
Beth A. Wilkinson (*pro hac vice*)            Whitty Somvichian (SBN 194463)
Rakesh N. Kilaru (*pro hac vice*)             Kathleen R. Hartnett (SBN 314267)
Calanthe Arat (SBN 349086)                    Ashley Kemper Corkery (SBN 301380)
Tamarra Matthews Johnson (*pro hac vice*)     3 Embarcadero Center, 20th Floor
Matthew R. Skanchy (*pro hac vice*)           San Francisco, California 94111-4004
2001 M Street NW, 10th Floor                  Telephone:  (415) 693 2000
Washington, DC 20036                          Facsimile:  (415) 693 2222
Telephone:  (202) 847-4000                    wsomvichian@cooley.com
Facsimile:  (202) 847-4005                    khartnett@cooley.com
bwilkinson@wilkinsonstekloff.com              acorkery@cooley.com
rkilaru@wilkinsonstekloff.com
carat@wilkinsonstekloff.com                   Mark Lambert (SBN 197410)
tmatthewsjohnson@wilkinsonstekloff.com        3175 Hanover Street
mskanchy@wilkinsonstekloff.com                Palo Alto, CA  94304-1130
                                              Telephone:  (650) 843-5000
Jacob K. Danziger (SBN 278219)                Facsimile:  (650) 849-7400
ARENTFOX SCHIFF LLP                           mlambert@cooley.com
44 Montgomery Street, 38th Floor
San Francisco, CA 94104                       Dee Bansal (*pro hac vice*)
Telephone: (734) 222-1516                     1299 Pennsylvania Ave. NW, Suite 700
Facsimile: (415) 757-5501                     Washington, DC 20004-2400
jacob.danziger@afslaw.com                     Telephone:  (202) 842 7800
                                              Facsimile:  (202) 842 7899
Attorneys for Defendant                       dbansal@cooley.com
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION                                   Attorneys for Defendant
                                              PAC-12 CONFERENCE

STIPULATED [PROPOSED] ORDER REGARDING DISCOVERY                    Case No. 4:23-cv-01593-CW
OF ELECTRONICALLY STORED INFORMATION

1

**MAYER BROWN LLP**

**SIDLEY AUSTIN LLP**

2

By: /s/ Britt M. Miller

By:  /s/ Angela C. Zambrano

3

Britt M. Miller (*pro hac vice*)
Daniel T. Fenske (*pro hac vice*)

David L. Anderson (SBN 149604)
555 California Street, Suite 2000

4

71 South Wacker Drive
Chicago, IL 60606

San Francisco, CA 94104
Telephone: (415) 772-1200

5

Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711

Facsimile: (415) 772-7412
dlanderson@sidley.com

6

bmiller@mayerbrown.com
dfenske@mayerbrown.com

7

Angela C. Zambrano (*pro hac vice*)
Natali Wyson (*pro hac vice*)

8

Christopher J. Kelly (SBN 276312)
Two Palo Alto Square, Suite 300

2021 McKinney Avenue, Suite 2000
Dallas, TX 75201

9

3000 El Camino Real
Palo Alto, CA 94306

Telephone: (214) 969-3529
Facsimile: (214) 969-3558

10

Telephone: (650) 331-2000
Facsimile: (650) 331-2060

angela.zambrano@sidley.com
nwyson@sidley.com

11

cjkelly@mayerbrown.com

12

Attorneys for Defendant

Chad Hummel (SBN 139055)
1999 Avenue of the Stars, Suite 1700

13

THE BIG TEN CONFERENCE, INC.

Los Angeles, CA 90067
Telephone: (310) 595-9505

14

Facsimile: (310) 595-9501
chummel@sidley.com

15

16

Attorneys for Defendant
THE BIG 12 CONFERENCE, INC.

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED [~~PROPOSED~~] ORDER REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION

Case No. 4:23-cv-01593-CW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ROBINSON, BRADSHAW & HINSON,
P.A.**

By: /s/ Robert W. Fuller
Robert W. Fuller, III (*pro hac vice*)
Lawrence C. Moore, III (*pro hac vice*)
Amanda P. Nitto (*pro hac vice*)
Travis S. Hinman (*pro hac vice*)
Patrick H. Hill (*pro hac vice*)
101 N. Tryon St., Suite 1900
Charlotte, NC 28246
Telephone:  (704) 377-2536
Facsimile:  (704) 378-4000
rfuller@robinsonbradshaw.com
lmoore@robinsonbradshaw.com
anitto@robinsonbradshaw.com
thinman@robinsonbradshaw.com
phill@robinsonbradshaw.com

Mark J. Seifert (SBN 217054)
SEIFERT ZUROMSKI LLP
One Market Street, 36th Floor
San Francisco, California 941105
Telephone:  (415) 999-0901
Facsimile:  (415) 901-1123
mseifert@szllp.com

Attorneys for Defendant
SOUTHEASTERN CONFERENCE

**LATHAM & WATKINS LLP**

By: /s/ Christopher S. Yates
Christopher S. Yates (SBN 161273)
Aaron T. Chiu (SBN 287788)
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
chris.yates@lw.com
aaron.chiu@lw.com

Anna M. Rathbun (SBN 273787)
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  (202) 637-1061
Facsimile:  (202) 637-2201
anna.rathbun@lw.com

**FOX ROTHSCHILD LLP**

By: /s/ D. Erik Albright
D. Erik Albright (*pro hac vice*)
Jonathan P. Heyl (*pro hac vice*)
Gregory G. Holland (*pro hac vice*)
230 North Elm Street, Suite 1200
Greensboro, NC 27401
Telephone:  (336) 378-5368
Facsimile:  (336) 378-5400
ealbright@foxrothschild.com
jheyl@foxrothschild.com
gholland@foxrothschild.com

Attorneys for Defendant
THE ATLANTIC COAST
CONFERENCE

16

| **WINSTON & STRAWN LLP** | **HAGENS BERMAN SOBOL SHAPIRO LLP** |
|---|---|

By: _____ */s/ Jeffrey L. Kessler* _____          By: _____ */s/ Steve W. Berman* _____
JEFFREY L. KESSLER                              STEVE W. BERMAN

Jeffrey L. Kessler (*pro hac vice*)            Steve W. Berman (*pro hac vice*)
David L. Greenspan (*pro hac vice*)            Emilee N. Sisco (*pro hac vice*)
Adam I. Dale (*pro hac vice*)                  Stephanie Verdoia (pro hac vice)
200 Park Avenue                                1301 Second Avenue, Suite 2000
New York, NY 10166-4193                        Seattle, WA 98101
Telephone: (212) 294-4698                      Telephone: (206) 623-7292
Facsimile: (212) 294-4700                      Facsimile: (206) 623-0594
jkessler@winston.com                           steve@hbsslaw.com
dgreenspan@winston.com                         emilees@hbsslaw.com
aidale@winston.com                             stephaniev@hbsslaw.com

Jeanifer E. Parsigian (SBN 289001)             Benjamin J. Siegel (SBN 256260)
101 California Street, 34th Floor              HAGENS BERMAN SOBOL SHAPIRO LLP
San Francisco, CA 94111-5840                   715 Hearst Avenue, Suite 202
Telephone: (415) 591-1000                      Berkeley, CA 94710
Facsimile: (415) 591-1400                      Telephone:  (510) 725-3000
jparsigian@winston.com                         Facsimile:   (510) 725-3001
                                               bens@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

1

**SIGNATURE ATTESTATION**

2

I, Rakesh N. Kilaru, am the CM/ECF user whose ID and password are being used to file this

3

Stipulated [Proposed] Order Regarding Discovery of Electronically Stored Information.  In compliance

4

with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been

5

obtained from each of the other signatories.

6

Dated:  November 9, 2023                                    Respectfully submitted,

7

                                                                          **WILKINSON STEKLOFF LLP**

8

9

By:    /s/ Rakesh N. Kilaru
                                                                          Rakesh N. Kilaru

10

                                                                          Attorney for Defendant
                                                                          National Collegiate Athletic Association

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

### DEFINITIONS

**A.**   **"Electronically stored information" or "ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media. Non- limiting examples of ESI include:

- Digital communications (e.g., e-mail, voice mail, instant messaging);

- E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);

- Word processed documents (e.g., Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- Sound Recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., .AVI and .MOV files);

- Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., individual entries stored in an Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies);

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Computer Aided Design/Drawing Files;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO); and

- Cloud based or other virtualized ESI, including application, infrastructure and data.

**B.**   **"Native File(s)" or "Native Format"** means and refers to ESI that has an associated file structure defined by the creating or viewing application in the file type for (or of)

1

the application in which such ESI is normally created, viewed, modified and/or as used by the producing party in the normal course of its business.

**C.**     **"Metadata"** means and refers to information embedded in or associated with a Native File (i) that does not constitute the primary content region of the file; (ii) that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File that describes the characteristics, origins, usage and/or validity of the electronic file; and/or (iii) that is generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

**D.**     **"Database"** means or refers to a set of related files that is created and managed by a Database Management System or DBMS.

**E.**     **"Database Management System" or "DBMS"** means and refers to software that controls the organization, storage, retrieval, security and integrity of data in a database.

**F.**     **"Static Image"** means or refers to a representation of ESI produced by scanning paper documents or converting a Native File to create a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

**G.**     **"Documents"** means or refers to any electronic or tangible medium from which information can be obtained and /or translated into reasonably usable form, and shall have the same meaning as used in the Federal Rules of Civil Procedure, including without limitation writings, computer file, drawings, graphs, charts, photographs, sound recordings, images, video and other data, data records or data.

**H.**     **"Load/Unitization File"** means or refers to an electronic file containing information identifying a set of paper-scanned images or processed ESI and containing (i) an indication of which individual pages or files constitute each Document, including attachments, and links to the Static Images associated with each Document; (ii) links to any Native Files, including

attachments, associated with each Document; and (iii) data relevant to each individual Document, including extracted and user-created Metadata and coded data.

**I.**     **"OCR"** means or refers to the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

**J.**     **"Extracted Text"** means or refers to the user-created text that can be electronically extracted from a native file without the use of OCR. Extracted text is favored over OCR.

**K.**     **"Receiving Party"** means or refers to the party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or pursuant to any initial production of documents identified in the party's Rule 26(a) disclosures.

**L.**     **"Producing Party"** means or refers to the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or pursuant to any initial production of documents identified in the party's Rule 26(a) disclosures.

**M.**     **"Bates Number"** means or refers to an identifier consisting of a two to seven letter prefix, associated with the Producing Party's name, followed by numbers (e.g., ABCD000000001). Each page in the production is assigned a unique, incremental Bates number. The prefix must be the same for all pages from the same Producing Party unless good reason exists for the Producing Party to use a different prefix.

**N.**     **"Media"** means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

**EXHIBIT B**

**METADATA FIELDS**

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|
| Begin Bates | Begin Bates (including prefix) – No spaces or special characters | Text | X | X | X | X |
| End Bates | End Bates (including prefix) – No spaces or special characters | Text | X | X | X | X |
| All Custodians | Identification of all custodians/sources who the producing party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. | Text | X | X | X | X |
| Custodian | Custodian(s) / source(s) John Doe or ABC Department | Text | X | X | X | X |
| Time Zone | The TimeZone from which the native file was processed | Text | | X | X | X |
| MD5 Hash | Document MDS hash value (used for deduplication or other processing) | Text | | X | X | X |
| Begin Family | Start Bates of family range | Text | X | X | X | X |
| End Family | End Bates of family range | Text | X | X | X | X |
| Pages | Page count | Integer | X | X | X | X |
| Confidentiality | Confidentiality designation for document | Text | X | X | X | X |
| Hidden Content | Indicates a document has hidden data (Y/N) | Text | | | X | |
| Track Changes | Indicates a document contains track changes (Y/N) | Text | | | X | |
| Comments | Indicates a document contains comments (Y/N) | Text | | | X | |
| Speaker Notes | Indicates a document contains speaker notes (Y/N) | Text | | | X | |

1

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|
| All Paths | Identification of all file paths for duplicate copies. | Text | | X | X | X |
| File Path/Directory Path | Email folder path (sample:Inbox/Active); The name of the folder from which the ESI document was obtained, including any parent folders | Text | | X | X | X |
| From | Author of the Email or Calendar Item | Text | | X | | X |
| To | Recipients of the Email | Multi-Entry | | X | | X |
| Cc | Names of individuals who were copied on the Email | Multi-Entry | | X | | X |
| Bcc | Names of individuals who were blind-copied on the Email | Multi-Entry | | X | | X |
| Subject | Email or calendar subject | Text | | X | | X |
| Date Created | Datetime electronic file was created internally. Format: MM/DD/YYYY 00:00 pm UTC | Datetime | | | X | |
| Date Modified | Datetime electronic file was last modified internally. Format: MM/DD/YYYY 00:00 pm UTC | Datetime | | | X | |
| Date Sent | Date the email was sent. Format: MM/DD/YYYY 00:00 pm UTC | Datetime | | X | | X |
| Date Received | Datetime Email was received. Format: MM/DD/YYYY 00:00 pm UTC | Datetime | | X | | X |
| Message Id | Proprietary email database/mailstore/post office file associated with centrally managed enterprise mail servers. Microsoft Outlook PST EntryID, the UniqueID (UNID) for Lotus | Text | | X | | X |

2

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|
| | Notes, equivalent value for other proprietary mailstore formats. | | | | | |
| Email Conversation Index | Email thread identification | Text | | X | | X |
| Date Saved | Date native file was last modified internally. Format: MM/DD/YYYY | Date | | | X | |
| Date Printed | Date native file was printed (metadata derived from Word documents, etc.) | Date | | | X | |
| Author | Author field value extracted from the metadata of a native file | Text | | | X | |
| Last Modified By | Identity of last person who modified the document internally from the metadata of a native file | Text | | | X | |
| Text Path | File path to the text file location on the delivery medium | Text | X | X | X | X |
| File Size | File size in KB | Integer | | X | X | X |
| Filename | File name of native file (E-Docs or attachments to Email) | Text | | X | X | X |
| Application | Application used to create native file (e.g., Excel, Outlook, Word) | Text | | X | X | X |
| File Extension | File extension of native file | Text | | X | X | X |
| NativePath | File path location to the current native file location on the delivery medium | Text | | | X | |
| Redacted | Indicates a document contains redactions (Y/N) | Text | X | X | X | X |
| Producing Party | Agency (US) or Entity (Defendants) from whom documents were collected | Text | X | X | X | X |

3