Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie A. Verdoia (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile:  (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com
aidale@winston.com

Jeanifer E. Parsigian (SBN 289001)
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Counsel for Plaintiffs and
the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| CHUBA HUBBARD and KEIRA MCCARRELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; ATLANTIC COAST CONFERENCE; THE BIG TEN CONFERENCE, INC.; THE BIG 12 CONFERENCE, INC.; PAC-12 CONFERENCE; and SOUTHEASTERN CONFERENCE,<br><br>Defendants. | Case No. 4:23-cv-01593-CW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>**PUBLIC REDACTED VERSION**<br><br>Date:      May 2, 2024<br>Time:      TBD<br>Judge:    Hon. Claudia Wilken<br>Courtroom: 2, 4th Floor |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF FACTS ....................................................................................... 3

    A.  As This Court Determined in *Alston*, Defendants' Prior
        Restrictions on Education-Related Compensation Violated the
        Sherman Act, Including During the Class Period .......................................... 3

    B.  Since the *Alston* Injunction Went into Effect, Defendants' Member
        Schools Have Established Eligibility Criteria and Spent Tens of
        Millions of Dollars Annually on Academic Achievement Awards .............. 4

    C.  Class Members Were Deprived of Significant Education-Related
        Compensation ............................................................................................... 5

III.  PROPOSED CLASS ............................................................................................... 5

IV.  ARGUMENT ......................................................................................................... 5

    A.  Standards For Class Certification ................................................................. 5

    B.  Plaintiffs Satisfy the Elements of Rule 23(a) .............................................. 6

        1.  The Class Members Are Sufficiently Numerous ............................... 6

        2.  The Class Presents Common Questions of Law and Fact ................. 6

        3.  The Class Representatives' Claims Are Typical ................................ 8

        4.  The Proposed Class Representatives and Their Counsel Will
            Adequately Represent the Class ...................................................... 10

    C.  Plaintiffs Satisfy the Requirements of Rule 23(b)(3) ................................ 11

        1.  Common Questions of Law and Fact Predominate .......................... 11

            a.  The Existence of An Unlawful Conspiracy Is an Issue
                Common to the Class ........................................................... 12

            b.  The Existence of Anticompetitive Effects in the
                Relevant Market and All Other Elements of Section 1
                Liability Will Be Issues Common to the Class ..................... 13

            c.  Antitrust Injury Can Be Proven on a Class-Wide Basis ............. 14

            d.  Damages Can Be Proven on a Class-Wide Basis ...................... 17

ii

2.      A Class Action is Superior to Other Available Methods of
        Adjudication......................................................................................................... 21

V.      THE COURT SHOULD APPOINT HAGENS BERMAN AND
        WINSTON & STRAWN AS CLASS COUNSEL ................................................. 22

VI.     CONCLUSION................................................................................................................ 23

011138-11/2439439 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdullah v. U.S. Sec. Assoc., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ..........................................................................11, 12

*Achzinger v. IDS Prop. Cas. Ins. Co.*,
  772 Fed. App'x 416 (9th Cir. 2019) .......................................................................19

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................12

*Amgen v. Conn. Ret. Plans and Tr. Funds*,
  568 U.S. 455 (2013)..................................................................................................12

*B.K. by next Friend Tinsley v. Snyder*,
  922 F.3d 969-70 (9th Cir. 2019) ..............................................................................9

*In re Capacitors Antitrust Litig. (No. III)*,
  2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) .......................................................12

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)............................................................................................17, 21

*In re ConAgra Foods, Inc.*,
  90 F.Supp.3d 919 (C.D. Cal. 2015) .......................................................................22

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
  773 F.2d 1506 (9th Cir. 1985) ...............................................................................19

*Dupler v. Costco Wholesale Corp.*,
  249 F.R.D. 29 (E.D.N.Y. 2008)................................................................................7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  2006 WL 1530166 (June 5, 2006) ...........................................................15, 18, 21

*Giuliano v. Sandisk Corp.*,
  2015 WL 10890654 (N.D. Cal. May 14, 2015).......................................................12

*In re Glumetza Antitrust Litig.*,
  336 F.R.D. 468 (N.D. Cal. 2020)............................................................................14

*Hawaii v. Standard Oil Co. of Cal.*,
  405 U.S. 251 (1972)..................................................................................................5

*In re High-Tech Emp. Antitrust Litig.*,
  985 F. Supp. 2d 1167 ...................................................................................6, 7, 9, 10

*Hubbard v. RCM Techs. (USA), Inc.*,
  2020 WL 6149694 (N.D. Cal. Oct. 20, 2020)..............................................................................6

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ................................................................10, 18, 21

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
  305 F.R.D. 164 (N.D. Cal. 2015)..............................................................................8

*In re Lidoderm Antitrust Litig.*,
  2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ............................................................19

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ..............................................................................22

*Meijer, Inc. v. Abbott Lab'ys*,
  2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) ........................................................18

*Moore v. Apple Inc.*,
  309 F.R.D. 532 (N.D. Cal. 2015) ..........................................................................12

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ................................................................................18

*Morelock Enterprises, Inc. v. Weyerhaeuser Co.*,
  2004 WL 2997526 (D. Or. Dec. 16, 2004) ............................................................22

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*,
  311 F.R.D. 532 (N.D. Cal. 2015)............................................................................10

*In re NCAA Student-Athlete Name & Likeness Licensing Litig. (O'Bannon)*,
  2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ................................................. *passim*

*NCAA v. Alston*,
  141 S. Ct. 2141 (2021)............................................................................... *passim*

*Nitsch v. Dreamworks Animation SKG Inc.*,
  315 F.R.D. 270 (N.D. Cal. 2016)..............................................................................9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (en banc) ......................................................... *passim*

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979)................................................................................................13

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ..........................................................................6, 19

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 986-88 (9th Cir. 2015) ..........................................................................19

v

*Purple Mountain Tr. v. Wells Fargo & Co.*,
   2022 WL 3357835 (N.D. Cal. Aug. 15, 2022) .......................................................................12

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979).................................................................................................................5

*Smilow v. Sw. Bell Mobile Sys.*,
   323 F.3d 32 (1st Cir. 2003)......................................................................................................7

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   264 F.R.D. 603 (N.D. Cal. 2009)...........................................................................................18

*Syverson v. Int'l Bus. Machines Corp.*,
   472 F.3d 1072 (9th Cir. 2007) ...............................................................................................13

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ...............................................................................................19

*Viceral v. Mistras Grp., Inc.*,
   2016 WL 5907869 (N.D. Cal. Oct. 11, 2016).........................................................................13

*In re Victor Techs. Secs. Litig.*,
   102 F.R.D. 53 (N.D. Cal. 1984)...............................................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................................................................6

*Whiteway v. FedEx Kinko's Off. & Print Servs., Inc.*,
   2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ......................................................................14

### STATUTES

Sherman Act.................................................................................................................. *passim*

### OTHER AUTHORITIES

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

7AA Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and
   Procedure, § 1781 (3d ed. 2005).............................................................................................13

011138-11/2439439 V1

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on May 2, 2024, before the Honorable Claudia Wilken, District Court Judge, at the Oakland Courthouse, Courtroom 2, 1301 Clay Street, Oakland, CA 94612, the Class Plaintiffs will and hereby do move the Court pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for an order certifying the following damages class (the "Class"):

> All current and former college athletes who competed on an athletic team at a college or university while that college or university was a member of one of the Power Five Conferences or Big East Conference (including Notre Dame, but excluding Georgetown) at any time between the beginning of the 2019-2020 academic year and the end of the 2021-2022 academic year who met, during the damages period, the contemporaneously measured requirements that would have qualified the athlete to receive an Academic Achievement Award under the criteria their schools set for qualifying for such an Award during the 2022-2023 academic year.[1]

> The Class excludes individuals who released their damages claims as part of the Settlement Agreement in *In re NCAA Grant-in-Aid Cap Antitrust Litigation*, No. 14-md-02541-CW (N.D. Cal. Dec. 6, 2017), ECF No. 746.

> The Class excludes the officers, directors, and employees of Defendants. The Class also excludes all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Expert Report of Professor Daniel A. Rascher, the accompanying Declarations of Steve W. Berman, Jeffrey L. Kessler, Chuba Hubbard, and Keira McCarrell, all exhibits and appendices to such documents, any papers filed in reply, any argument as may be presented at the hearing, and all other papers and records on file in this matter. Plaintiffs will also move the Court for the appointment of Hagens Berman Sobol Shapiro LLP and Winston & Strawn LLP as Co-Lead Class Counsel for the Class pursuant to Federal Rule of Civil Procedure 23(g).

---

[1] In Appendix A to this motion, Plaintiffs have identified these requirements for class membership at each school in the class.

011138-11/2439439 V1

# GLOSSARY OF DEFINED TERMS

| Term | Definition |
| --- | --- |
| ACC Answer | Defendant Atlantic Coast Conference's Answer to Plaintiffs' Chuba Hubbard and Keira McCarrell's Class Action Complaint (June 9, 2023), ECF No. 82 |
| Berman Decl. | Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Class Certification and Appointment of Hagens Berman Sobol Shapiro LLP as Co-Lead Class Counsel, filed concurrently herewith |
| Big Ten Answer | Answer and Additional Defenses of Defendant The Big Ten Conference, Inc. to the Complaint (June 9, 2023), ECF No. 81 |
| Big 12 Answer | Answer and Defenses of Defendant The Big 12 Conference, Inc. to Plaintiffs' Class Action Complaint (June 9, 2023), ECF No. 83 |
| Hubbard Decl. | Declaration of Chuba Hubbard in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith |
| Kessler Decl. | Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Motion for Class Certification and Appointment of Winston & Strawn as Co-Lead Class Counsel |
| McCarrell Decl. | Declaration of Keira McCarrell in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith |
| NCAA Answer | Answer of Defendant National Collegiate Athletic Association to Complaint (June 9, 2023), ECF No. 89 |
| Pac-12 Answer | Answer and Additional Defenses of Defendant Pac-12 Conference to the Complaint (June 9, 2023), ECF No. 87 |
| Rascher | Expert Class Certification Report of Daniel A. Rascher, filed concurrently herewith |
| SEC Answer | Answer of Defendant Southeastern Conference (June 9, 2023), ECF No. 78 |

011138-11/2439439 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

The issues for this Court to decide are (1) whether the Court should certify the proposed Class defined in the motion for class action treatment; (2) whether the Court should appoint Plaintiffs as Class Representatives; and (3) whether the Court should appoint Hagens Berman Sobol Shapiro LLP and Winston & Strawn LLP as Co-Lead Class Counsel.

011138-11/2439439 V1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

After an extensive bench trial, this Court held in 2019 that the NCAA and its co-conspirators, including the Power Five Conferences, violated the Sherman Act by, among other things, prohibiting schools from offering Academic Achievement Awards to college athletes of up to $5,980 per year. That decision was upheld, unanimously, by the Supreme Court in July 2021. Class Plaintiffs in that case—*In re NCAA Grant-in-Aid Cap Antitrust Litigation*—brought claims for injunctive relief only. In the wake of the Supreme Court's affirmance, in October 2021, the NCAA changed its bylaws to permit NCAA schools to offer Academic Achievement Awards (also called Alston Awards) to Division I college athletes in all sports in amounts up $5,980 per year. Demonstrating the power of the NCAA's collusive rules and the degree of competition they had suppressed, just a few years later every single school in each of Power Five Conferences, plus many schools in other conferences, including every school in the Big East Conference, now offers these Awards. Today, tens of thousands of deserving college athletes receive Academic Achievement Awards.

Plaintiffs here bring claims seeking damages for the tens of thousands of college athletes who were denied the opportunity to receive such Awards, and collectively lost out on hundreds of millions of dollars, before this Court's injunction forced the NCAA to change its rules. In this class certification motion, Plaintiffs seek to represent, and ask for damages on behalf of, a class of college athletes who attended Power Five and Big East schools[2] in 2019-20, 2020-21, and 2021-22 and met benchmarks that their schools measured at the time and now apply as criteria to determine eligibility for Academic Achievement Awards, such as being on a team roster, earning particular minimum G.P.A.s, and/or receiving a partial or full athletic scholarship.

This is the prototypical case for class certification. Rule 23's requirements are readily established. With respect to Rule 23(a), there are tens of thousands of class members, and there can be no genuine dispute that each of the named Plaintiffs will be adequate and typical class representatives, with common interests and claims, challenging the same rules as all other members

---

[2] The class includes athletes that attended Notre Dame and excludes athletes that attended Georgetown.

of the class, and seeking the same relief. And proposed class counsel—the same lead counsel and firms who were appointed class counsel in *NCAA Grant-in-Aid Cap* and *In re College Athlete NIL Litigation*—are well-qualified to serve the same roles here. The challenged NCAA restraints also applied uniformly to all members of the class. Further, all of the core liability issues of Plaintiffs' Sherman Act § 1 claim can be proven with common evidence: the existence of a conspiracy (i.e., Defendants' uniform rules), the significant anticompetitive effects that those restraints inflict on relevant labor markets, Defendants' market (monopsony) power in those markets, the lack of any validity to Defendants' claimed procompetitive justifications (which, by definition, must apply or not apply to all class members), and the injury to all athletes who would have met their schools' criteria and received Academic Achievement Awards during the damages period but for the NCAA restraints held to be unlawful in *Alston*.

The requirements of Rule 23(b)(3) are also clearly met. Plaintiffs' showing of common evidence for proving each of these elements demonstrates that common issues predominate, including the common issue of class-wide antitrust injury. And once fact-of-injury is established for the class, as is the case here, Plaintiffs have a "relaxed" burden to show that damages can be proven on a class-wide basis through a common methodology. Plaintiffs have more than satisfied this burden, too, through the accompanying expert economic report of Dr. Daniel Rascher.

Dr. Rascher shows through common economic evidence that all or nearly all members of the class were injured by Defendants' collusive conduct because in the but-for world absent that conduct, they would have received Academic Achievement Awards during the damages period in an amount greater than zero. All of the class members attended schools that provide Academic Achievement Awards now, which Dr. Rascher opines is strong economic evidence that these schools would have offered Awards, in at least the same amounts, with the same qualifying criteria, during the class period. The class is also limited to those athletes who during the class damages period would have met the criteria—such as G.P.A. requirements or being on the team roster—that their schools used in 2022-2023 to determine whether an athlete would receive an Academic Achievement Award. As Dr. Rascher explains, the natural experiment showing the criteria for providing Academic Achievement Awards that resulted from competition among NCAA schools provides a reliable basis for him to

conclude that the same criteria would have been adopted by these schools in the but-for world. Plaintiffs have specifically identified in Appendix A to this motion the requirements for class membership to demonstrate that the class is objectively defined.

To estimate class-wide damages, Dr. Rascher applies the same well-established before-and-after methodology used in *In re College Athlete NIL Litigation* to the data showing the amount of Academic Achievement Awards provided in the most recent academic year by schools that class members attended (the "after" period) to estimate damages to the entire class during the damages period (the "before" period). After demonstrating that his method can be applied class-wide, Dr. Rascher preliminarily estimates total class damages at approximately $313 million. This common methodology can be updated with any additional data and presented to the jury at trial for a determination of class-wide damages.

Finally, this action presents the quintessential set of claims for which class treatment is superior to individual actions. With tens of thousands of individual class members having damages claims that pale in comparison to the cost of antitrust litigation against these well-resourced Defendants, this is precisely the type of judicially efficient and manageable case for which Rule 23 was designed.

## II. STATEMENT OF FACTS

### A. As This Court Determined in *Alston*, Defendants' Prior Restrictions on Education-Related Compensation Violated the Sherman Act, Including During the Class Period

In *In re NCAA Grant-in-Aid Cap Antitrust Litigation*, this Court held that NCAA rules prohibiting schools from offering education-related compensation, including Academic Achievement Awards of up to $5,980 each year, violated Section 1 of the Sherman Act, 15 U.S.C. § 1. 375 F. Supp. 3d 1058 (N.D. Cal. 2019). Among other things, the trial court concluded that because NCAA rules permitted all D-I athletes to earn up to $5,980 each year for *athletic* achievement, Defendants could not justify restricting the same level of compensation for *academic* achievement. *Id.* at 1109 (holding that the NCAA may limit academic or graduation awards if the limit is not less than that for athletics participation awards); Order Granting Motion for Clarification of Injunction, *In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-02541-CW (N.D. Cal. Dec. 30, 2020), ECF No. 1329 (order establishing that the limit on academic and graduation awards may not be less

than $5,980 in an academic year). In July 2021, the Supreme Court upheld that decision. *NCAA v. Alston*, 141 S. Ct. 2141 (2021).

The Defendants in this case—the NCAA and the Power Five Defendants—are the same defendants found liable in *Alston*. At issue in the *Alston* trial were plaintiffs' claims seeking to enjoin the collusive rules preventing (among other things) education-related payments in the form of Academic Achievement Awards. *Alston* conclusively establishes that Defendants' prohibition of such compensation violated the Sherman Act.[3] The only issue yet to be determined is the amount of damages inflicted upon Plaintiffs and the class by Defendants. That is the focus of this case.

**B.**   **Since the *Alston* Injunction Went into Effect, Defendants' Member Schools Have Established Eligibility Criteria and Spent Tens of Millions of Dollars Annually on Academic Achievement Awards**

After the Ninth Circuit affirmed this Court's injunction in *Grant-in-Aid Cap* and denied a request to stay its enforcement,[4] the NCAA adopted Bylaw 16.1.4.5 to permit men's and women's basketball and bowl subdivision football players to receive Academic Achievement Awards of up to $5,980 each academic year. Following the Supreme Court's decision in *Alston*, on October 6, 2021, the NCAA revised Bylaw 16.1.4.5 to allow Division I athletes in *all* sports to receive such awards. Since then, approximately one hundred NCAA member schools have started offering Academic Achievement Awards to their athletes and others have announced plans to offer these payments in the near future. Berman Decl. ¶ 4. These schools have established eligibility criteria that athletes must meet to receive Academic Achievement Awards and tens of thousands of athletes have received tens of millions of dollars in awards after meeting these criteria.  *See* Rascher ¶¶ 65-66, 92, 103.

The class in this case is limited to athletes who attended 75 schools that were members of the Power Five or Big East Conferences (including Notre Dame, but excluding Georgetown)—all of whom have begun offering Academic Achievement Awards in the few years since the NCAA was forced to change its rules. Cabined by the Sherman Act's four-year statute of limitations, class

---

[3] As described below, if the Court were to determine that collateral estoppel did not bar re-litigation of any issue, Plaintiffs have demonstrated that they can prove all issues necessary to a liability finding with evidence that is common to the class. *See infra*, Section IV.C.1.b.

[4] *See* Opinion, *In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, No. 19-15566 (9th Cir. May 18, 2020), ECF No. 129-1; *motion to stay mandate denied*, Aug. 4, 2020, ECF No. 141.

members include athletes who attended those schools in the 2019-20, 2020-21, or 2021-22 academic years.

## C.   Class Members Were Deprived of Significant Education-Related Compensation

The class-wide evidence shows that, but for the NCAA's rules prohibiting Academic Achievement Awards, Defendants' member schools would have competed with one another to provide athletes with these payments during the class period. This is evident from the fact that these schools began making such payments shortly after the restraint was lifted, thereby demonstrating that—but for the restraint—these schools would have done so long ago. As Dr. Rascher explains, because the same class-wide economic competition that compelled these schools to begin offering Awards after they became permissible under NCAA rules existed during the class period, the schools would have offered Awards in the absence of Defendants' rules. Rascher ¶ 28.

As a result of Defendants' anticompetitive agreements, Plaintiffs and other similarly situated current and former college athletes were deprived of compensation that they would have received in a competitive market. Absent Defendants' unlawful labor market restraints, class members would have received Academic Achievement Awards dating back to at least the beginning of the class period.

### III.   PROPOSED CLASS

Plaintiffs seek certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) to pursue damages resulting from Defendants' unlawful restraints on behalf of the class described in the Notice of Motion and Motion. As explained in the remainder of this brief, Plaintiffs respectfully submit that the Court should certify the class under Rules 23(a) and (b)(3).

### IV.   ARGUMENT

## A.   Standards For Class Certification

The Supreme Court and Ninth Circuit have recognized that antitrust class actions play an important role in the enforcement of the antitrust laws. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (en banc); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972).

To certify a class, Plaintiffs must satisfy each element of Rule 23(a) and at least one of the subsections of Rule 23(b). Rule 23(a) provides that class certification is appropriate if: "(1) the class

is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Id.*; *see* Order Granting Motion for Certification of Damages Classes, *In re College Athlete NIL Litig.*, No. 20-cv-03919, ECF No. 387, slip op. at 5 (N.D. Cal. Nov. 3, 2023) (hereinafter, "*NIL Class Cert. Order*").

As for Rule 23(b), Plaintiffs seek certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) permits class certification where common questions of law and fact "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *NIL Class Cert Order*, slip op. at 5. The proposed class satisfies all these requirements.

**B.      Plaintiffs Satisfy the Elements of Rule 23(a)**

**1.      The Class Members Are Sufficiently Numerous**

Classes are generally sufficiently numerous when they are comprised of 40 or more members. *See Hubbard v. RCM Techs. (USA), Inc.*, 2020 WL 6149694, at *1 (N.D. Cal. Oct. 20, 2020). Dr. Rascher opines that the putative class here has tens of thousands of members. It is thus sufficiently numerous. *See* Rascher ¶ 10.

**2.      The Class Presents Common Questions of Law and Fact**

To satisfy the commonality requirement, "[e]ven a single [common] question will do," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011),[5] and "courts have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010), *amended in part by* 2011 WL 3268649 (N.D. Cal. July 28, 2011)); *see In re NCAA Student-Athlete Name & Likeness Licensing Litig. (O'Bannon)*, 2013 WL 5979327, at *4 (N.D. Cal. Nov. 8, 2013) ("all that Rule 23(a)(2) requires is 'a single ***significant*** question of law or fact'") (internal quotation marks omitted). This is because

---

[5] *Accord Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 n.8 (9th Cir. 2015).

"[a]ntitrust liability alone constitutes a common question that 'will resolve an issue that is central to the validity' of each class member's claim 'in one stroke.'" *High-Tech.*, 985 F. Supp. 2d at 1180 (quoting *Dukes*). As a result, commonality is "usually met in the antitrust . . . context when all class members' claims present common issues including (1) whether the defendant's conduct was actionably anticompetitive under antitrust standards; and (2) whether that conduct produced anticompetitive effects within the relevant product and geographic markets." *O'Bannon*, 2013 WL 5979327, at *4 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 336 (3d Cir. 2011) (Scirica, J., concurring), *cert. denied*, 132 S. Ct. 1876 (2012)).

Plaintiffs have identified numerous questions of law and fact that are common to all members of the class. *See* Compl. ¶ 102. Such questions include whether Defendants are precluded from contesting liability by principles of collateral estoppel, (if not) whether there has been an unlawful conspiracy that caused anticompetitive effects in relevant markets, whether the class has suffered antitrust injury, and the appropriate measure of damages. *See* Rascher ¶ 10 ("The economic conclusions related to anticompetitive effects, asserted pro-competitive justifications, less restrictive alternatives, class-wide injury, and class member damages can be proven by means of non-individualized economic evidence and methodologies common to class members.").

Defendants have also pleaded a number of affirmative defenses, including that the challenged rules "did not unreasonably restrain trade, but were lawful, justified, and procompetitive."[6] These defenses, which can be considered in determining the issue of commonality, underscore that the requirements of Rule 23(a)(2) are met. *See, e.g.*, *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 39-40 (1st Cir. 2003); *O'Bannon*, 2013 WL 5979327, at *4 ("whether the NCAA's procompetitive justifications for its conduct are legitimate" was common question); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008); *In re Victor Techs. Secs. Litig.*, 102 F.R.D. 53, 62 (N.D. Cal. 1984). *See also* Rascher ¶ 47 ("if the full Rule of Reason applies and Defendants have the opportunity to assert procompetitive justifications for the challenged conduct, an economic assessment

---

[6] *See* NCAA Answer at 17; ACC Answer at 16; Big Ten Answer at 16; Big 12 Answer at 18; Pac-12 Answer at 17; SEC Answer at 13.

of those claimed justifications will be made through economic evidence common to all members of the proposed class").

The common questions presented by this litigation revolve around the central issues of the existence and effect of Defendants' conspiracy in restraint of trade. As such, commonality is satisfied. *See Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 183 (N.D. Cal. 2015) ("Plaintiffs['] claim rests on the question of whether the Guidelines constitute an unlawful price fixing agreement. . . . The Court is therefore satisfied that whether the Guidelines violate the antitrust laws is a question common to all class members and susceptible to resolution by common proof, and thus meets Rule 23(a)(2)'s commonality requirement."); *O'Bannon*, 2013 WL 5979327, at *4 (same).

### 3. The Class Representatives' Claims Are Typical

The claims of the named plaintiffs satisfy Rule 23(a)(3)'s typicality requirement.

Plaintiff Chuba Hubbard ("Hubbard") is a former Division I athlete who competed in the Big 12 Conference (a Power 5 Conference) for Oklahoma State University's ("OSU") football team from 2017-2021. During his time at OSU, Hubbard excelled athletically and academically. In 2019, Hubbard was a unanimous All-American, the Big 12 Offensive Player of the Year, a finalist for the Walter Camp Player of the Year Award, and one of three national finalists for the Doak Walker Award presented to the nation's top running back. He also finished eighth in the voting for the Heisman Trophy. The same year, he received special recognition from OSU for his academic accomplishments and was included on the Dean's Honor Roll. And in 2020, Hubbard was named First Team Academic All-Big 12. Throughout his playing career at OSU, Hubbard received a full athletic scholarship, but was prohibited from receiving an Academic Achievement Award for his scholastic performance. Hubbard Decl. ¶¶ 3-4. Considering the criterion OSU applies today for athletes to qualify for an Academic Achievement Award, Hubbard would have qualified for such Awards during the class period as an OSU athlete if OSU had been permitted to offer them. *See* Appendix A at 7 & Hubbard Decl. ¶ 5.

Plaintiff Keira McCarrell ("McCarrell") is a former Division I athlete who competed in the Southeastern Conference ("SEC") for Auburn University's track and field team from 2019–2022. In

2017 and 2018, McCarrell attended the University of Oregon and subsequently transferred to Auburn where she competed for three years. McCarrell was both an outstanding collegiate athlete and an excellent student. As a junior, she was named the female recipient of the 2021 PNC Achievers Award for her achievement in leadership, academic success, community engagement, and athletic competition. As a senior, she was an Academic All-American and was named to the SEC's Academic Honor Roll. From 2019 to 2021, McCarrell received a full athletic scholarship but was prohibited from receiving any additional compensation for her academic performance. After February 2022, however, McCarrell received Academic Achievement Award payments from Auburn. McCarrell Decl. ¶ 7. Considering the criterion Auburn applies today for athletes to qualify for an Academic Achievement Award, McCarrell would have qualified for such Awards during the class period as an Auburn athlete if Auburn had been permitted to offer them. *See* Appendix A at 19 & McCarrell Decl. ¶ 8.[7]

To satisfy Rule 23(a)(3)'s typicality requirement, named plaintiffs' claims must be "reasonably coextensive with those of absent class members; they need not be substantially identical." *B.K. by next Friend Tinsley v. Snyder*, 922 F.3d 969-70 (9th Cir. 2019) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1999)). "In antitrust cases, typicality usually will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 274 (N.D. Cal. 2016) (quoting *Pecover v. Elec. Arts, Inc.* 2010 WL 8742757, at *11 (N.D. Cal. Dec. 21, 2010)); *High-Tech*, 985 F. Supp. 2d at 1181 (same).

Here, given the universal application of the challenged NCAA rules to all class members, the claims of the representative parties are typical of those of the entire class. Indeed, just like the members of the class, each Class Representative has competed in Division I college athletics and was subject to the identical restraint prohibiting Academic Achievement Awards. All class members, including the Class Representatives, further allege that Defendants' rules were anticompetitive and violated Sherman Act § 1. And all class members, including the Class Representatives, similarly allege that they were injured because, absent Defendants' rules, they would have had the opportunity to receive— and would have in fact received—Academic Achievement Awards because they met the criteria

---

[7] Hubbard and McCarrell are referred to collectively as the "Class Representatives."

subsequently established by their schools. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("The requirement of typicality is not primarily concerned with whether each person in a proposed class suffers the same type of damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Moreover, the Class Representatives allege that they suffered the same or similar injuries as the members of the class. Hubbard and McCarrell allege that absent the challenged NCAA rules, they would have received compensation for their academic-related accomplishments through Academic Achievement Awards. Hubbard Decl. ¶ 4; McCarrell Decl. ¶ 5. This is the same injury and damages alleged by all other members of the class. *See* Rascher ¶¶ 69, 91; Sections IV.C.1.c-d, *infra*. Thus, typicality is satisfied. *See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig. (Alston)*, 311 F.R.D. 532, 546 (N.D. Cal. 2015) ("This [typicality] requirement is usually satisfied if the named plaintiffs have suffered the same or similar injuries as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members were injured by the same course of conduct."); *O'Bannon*, 2013 WL 5979327, at *4.

### 4.    The Proposed Class Representatives and Their Counsel Will Adequately Represent the Class

Plaintiffs and their counsel will adequately represent the proposed class. Meeting the adequacy requirement hinges upon resolving two questions: "(1) whether named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." *High-Tech*, 985 F. Supp. 2d at 1181; *see O'Bannon*, 2013 WL 5979327, at *5 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

The named Plaintiffs do not have any conflicts of interest with the other class members. To the contrary, the Class Representatives' interests are squarely aligned with other class members in proving that the restraints damaged the class. The Class Representatives are fully committed to this case. They have devoted substantial time to conferring with counsel about the facts and strategy of the case and have demonstrated that they will prosecute the matter vigorously. *See* Hubbard Decl. ¶ 8; McCarrell Decl. ¶ 10.

1    Furthermore, Plaintiffs' proposed Class Counsel satisfy the adequacy requirement. In retaining

2    Hagens Berman and Winston & Strawn, Plaintiffs have employed firms with long track records of

3    vigorously prosecuting complex antitrust actions like this one and who are well-versed in litigation

4    against the NCAA. Both firms have previously been appointed lead class counsel for NCAA athletes

5    by this Court in *Alston* and *House*—cases determined to be related to this one—and have achieved

6    significant litigation success in that role. *See infra*, Part V.

7    **C.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3)**

8    A class is certifiable under Fed. R. Civ. P. 23(b)(3) where (1) "questions of law or fact common

9    to the members of the class predominate over any questions affecting only individual members," and

10   (2) "a class action is superior to other available methods for fair and efficient adjudication of the

11   controversy." Each of these requirements is met here.

12   **1.    Common Questions of Law and Fact Predominate**

13   "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the

14   common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive

15   to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 964 (9th

16   Cir. 2013) (internal quotation marks and citation omitted). This Court explained in the *NIL Class Cert.

17   Order* that "'[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in

18   the case are more prevalent or important than the non-common, aggregation-defeating, individual

19   issues.'" *NIL Class Cert. Order*, slip op. at 12 (quoting *Olean*, 31 F.4th at 664). "'In order for the

20   plaintiffs to carry their burden of proving that a common question predominates, they must show that

21   the common question relates to a central issue in the plaintiffs' claim.'" *NIL Class Cert. Order*, slip

22   op. at 12-13 (quoting *Olean*, 31 F.4th at 665). "'When one or more of the central issues in the action

23   are common to the class and can be said to predominate, the action may be considered proper under

24   Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages

25   or some affirmative defenses peculiar to some individual class members.'" *NIL Class Cert. Order*, slip

26   op. at 13 (quoting *Olean*, 31 F.4th at 668).

27   Importantly, "a district court is limited to resolving whether the evidence establishes that a

28   common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that

plaintiffs would win at trial." *Olean*, 31 F.4th at 667. Moreover, Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Abdullah*, 731 F.3d at 964; *Purple Mountain Tr. v. Wells Fargo & Co.*, 2022 WL 3357835, at *2 (N.D. Cal. Aug. 15, 2022) (same). Common questions need not predominate on every issue. Rather, "the inquiry is a holistic one, in which the Court considers whether overall, considering the issues to be litigated, common issues will predominate." *Moore v. Apple Inc.*, 309 F.R.D. 532, 544 (N.D. Cal. 2015). Plaintiffs need not prove at this stage that these "questions will be answered, on the merits, in favor of the class." *Amgen v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013) (plaintiffs must "show[] that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class") (emphasis in original).

Here, because the issues to be litigated—whether Defendants and their co-conspirators are precluded from contesting liability, (if not) whether there has been an unlawful conspiracy that caused anticompetitive effects in relevant markets, the antitrust injury caused by the conspiracy, and damages—can be determined through evidence common to the class, common issues clearly predominate over individualized ones.

### a. The Existence of An Unlawful Conspiracy Is an Issue Common to the Class

Antitrust liability in conspiracy cases is inherently a question common to the putative class because the relevant inquiry is into *Defendants*' conduct, not individual class member's conduct. *See Giuliano v. Sandisk Corp.*, 2015 WL 10890654, at *17 (N.D. Cal. May 14, 2015) ("The question of whether there has been an antitrust violation is a common issue rather than an individual one. In no event will the individual circumstances of particular class members be relevant to the inquiry of whether such a violation has occurred."). For that reason, courts often find that whether a conspiracy exists is a common question that predominates over the other issues in the case. *See e.g.*, *In re Capacitors Antitrust Litig. (No. III)*, 2018 WL 5980139, at *5 (N.D. Cal. Nov. 14, 2018) ("[A]s many courts have noted, the claim of a conspiracy to fix prices inherently lends itself to a finding of . . . predominance, even when the market involves different products and prices."); 6 NEWBERG ON CLASS ACTIONS, § 18.25 (4th ed. 2002) ("[C]ommon liability issues such as conspiracy

---

1   or monopolization have, almost invariably, been held to predominate over individual issues.");

2   7AA Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, §

3   1781 (3d ed. 2005) ("whether a conspiracy exists is a common question that is thought to predominate

4   over the other issues in the case"); *see also Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *4

5   (N.D. Cal. Oct. 11, 2016) ("the Court finds that predominance is satisfied because all of Plaintiffs'

6   claims arise from allegations of [Defendants'] systemic practices and policies, and accordingly,

7   liability may be determined on a classwide basis").

8          In this case, the common issue of antitrust liability strongly favors resolving the claims on a

9   class-wide basis. The collusive rules at issue here applied uniformly to all Division I college athletes,

10  including but not limited to members of the class.

11              **b.      The Existence of Anticompetitive Effects in the Relevant Market and All
                          Other Elements of Section 1 Liability Will Be Issues Common to the Class**

12

13         Because the *Grant-in-Aid Cap* case that was litigated to final judgment against these same

14  Defendants provided each of them the full and fair opportunity to litigate the issue of whether their

15  rules prohibiting the payment of Academic Achievement Awards violated the Sherman Act and

16  whether there were procompetitive justifications for those rules, Defendants are precluded from

17  relitigating those issues here under principles of collateral estoppel. *See Parklane Hosiery Co. v.*

18  *Shore,* 439 U.S. 322, 329 (1979); *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th

19  Cir. 2007).

20         But even if the Court permits Defendants to relitigate these issues (it should not), Plaintiffs

21  will utilize class-wide economic evidence to demonstrate that Defendants' conduct caused

22  anticompetitive effects in the relevant markets without any procompetitive justification, or to show

23  that liability can be established through a "quick look" application of the rule of reason. Where a claim

24  under Section 1 arises out of the alleged anticompetitive effect of NCAA rules, the determination of

25  whether there has been a violation is based on the application of the rule of reason, which "generally

26  requires a court to conduct a fact-specific assessment of market power and market structure to assess

27  a challenged restraint's actual effect on competition." *Alston*, 141 S. Ct. at 2151 (citation and internal

28  quotation marks omitted). The rule of reason calls for an assessment of whether the challenged NCAA

rules constitute a contract, combination, or conspiracy affecting interstate commerce that produces significant anticompetitive effects in the relevant market; whether there are any procompetitive justifications for the rules; and whether any such procompetitive effects can be achieved by less restrictive alternatives. *See id.* at 2151-53, 2160-61. The question of whether an antitrust violation under Section 1 exists naturally lends itself to common proof, because that determination "turns on defendants' conduct and intent along with the effect on the market, not on individual class members." *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 475 (N.D. Cal. 2020) (citation omitted); *see also O'Bannon*, 2013 WL 5979327, at *4 (whether "NCAA rules have harmed competition" in the relevant markets alleged, whether those rules produced "anticompetitive effects," and whether the "NCAA's procompetitive justifications for its conduct are legitimate," were common questions).

Here, every rule-of-reason issue is common to the class. The common evidence will focus on Defendants' conduct and will include evidence of how Defendants jointly adopted, imposed, and enforced rules that had the purpose and effect of restraining competition in the relevant labor markets by prohibiting Academic Achievement Awards. These fundamental Section 1 issues weigh decidedly in favor of class certification. "Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Whiteway v. FedEx Kinko's Off. & Print Servs., Inc.*, 2006 WL 2642528, at *10 (N.D. Cal. Sept. 14, 2006) (citing *Smilow*, 323 F.3d at 40). Dr. Rascher shows in his report that economic evidence common to the class can be used to demonstrate that Defendants' conduct caused anticompetitive effects in the relevant markets, to assess any asserted procompetitive justification, and if necessary, to assess less restrictive alternatives. *See* Rascher ¶¶ 12-63.

### c.    Antitrust Injury Can Be Proven on a Class-Wide Basis

Plaintiffs will also be able to prove at trial through class-wide methodologies that all or nearly class members suffered antitrust injury. At this stage, however, Plaintiffs are not required to actually prove antitrust injury to class members and need only demonstrate that such an injury may be established through class-wide evidence. *Olean*, 31 F.4th at 679. As this Court explained in the *NIL Class Cert. Order*, "the Court [should be] mindful that, when 'making the determinations necessary to find that the prerequisites of Rule 23(b)(3) are satisfied, the district court must proceed just as the

1   judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit. . . . [A]

2   district court cannot decline certification merely because it considers plaintiffs' evidence relating to

3   that common question to be unpersuasive and unlikely to succeed in carrying plaintiffs' burden of

4   proof on that issue.'" *NIL Class Cert. Order*, slip. op. at 15-16 (quoting *Olean*, 31 F.4th at 667). All

5   the court must do is find that Plaintiffs have '"come forward with seemingly realistic methodologies'"

6   to demonstrate class-wide injury. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,

7   No. 2006 WL 1530166, at *8 (June 5, 2006) (quoting *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D.

8   346, 353 (N.D. Cal. 2005)); *see also Olean,* 31 F.4th at 679 ("A lack of persuasiveness is not fatal at

9   certification.").

10        Common economic evidence will be used at trial to prove that, absent the challenged restraint,

11  all or nearly all members of the class would have received an Academic Achievement Award in a

12  dollar amount greater than zero. To begin with, the class is limited to NCAA athletes who competed

13  on an athletic team at a college or university in one of the Power Five Conferences (plus Notre Dame)

14  or the Big East Conference (excluding Georgetown). Each of these schools began awarding Academic

15  Achievement Awards soon after Defendants' rules permitted them. Rascher ¶ 68. The class is also

16  limited to athletes at these schools who, during the "before" (class damages) period, met benchmarks

17  that were measured at the time and subsequently used by their schools during the "after" period (the

18  2022-23 academic year) for determining which athletes receive an Academic Achievement Award.

19  *See* Notice of Motion and Motion, *supra*; Rascher ¶ 69. In Appendix A to this Motion, based on

20  discovery provided to date, Plaintiffs have identified the contemporaneously measured requirements

21  established by each school within the class for receiving an Academic Achievement Award during the

22  2022-23 academic year. *See* Berman Decl. ¶ 3; Appendix A. Consistent with the class definition, only

23  college athletes who met these requirements are class members. Such objective and measurable

24  criteria, as listed in Appendix A, include being on a team roster, earning a minimum G.P.A., and

25  receiving a minimum athletic scholarship. *See, e.g.*, Appendix A at ██████████████

26  ████████████████████████████████.

27        Dr. Rascher opines that common economic evidence can be used to show that all or nearly all

28  college athletes meeting such criteria would have received Academic Achievement Awards absent

Defendants' challenged rules. Because the same labor market competition that compelled these schools to quickly begin offering Awards when they were permitted to do so existed during the class period, all of these schools likely would have offered such Awards in the absence of Defendants' rules. Rascher ¶ 66. Dr. Rascher also opines that the criteria established by each of these schools to qualify for an Academic Achievement Award represent a close estimate of the criteria those schools would have used during the damages period had the challenged rules not existed. *Id.*, ¶¶ 67-68. Dr. Rascher thus concludes all or virtually all class members would have received an Academic Achievement Award in the but-for world absent the challenged rules because they met, during the damages period, the benchmarks that were measured at the time and are now being used by their schools as criteria for determining which athletes receive an Academic Achievement Award.  Rascher ¶¶ 69-72.

While a minority of schools also include criteria that were not contemporaneously measured during the class period—such as requirements to attend a financial education workshop or to upload a resume to the school's job board or to create a LinkedIn profile—Dr. Rascher opines that it is economically reasonable to assume that athletes who met the then-measured requirements during the damages period (such as a minimum G.P.A.) also would have completed any contemporaneously unmeasured criteria given the relatively large financial incentive to complete these easy-to-meet requirements. Rascher ¶ 71.

Further, a small number of schools claim to have exercised discretion to *not* provide Awards to athletes even if they meet the school's criteria. Rascher ¶ 76 & n. 52. However, the data the schools have provided on Academic Achievement Awards shows that such discretionary denials are exceedingly rare. *See id.*[8] Thus, Dr. Rascher concludes that the possibility of an athlete who met his



011138-11/2439439 V1

1  or her school's criteria during the damages period but nonetheless would *not* have received an Award

2  due to his or her school's discretion is *de minimis*. *Id*. Indeed, Dr. Rascher has conservatively

3  calculated that less than 2% of the class—and likely a smaller percentage—would fall into this

4  category. Rascher ¶¶ 75-76 & n. 52.[9]

5         The possibility that a small fraction of the class might not have received an Award even if they

6  met their school's Award criteria has no impact on class certification. The Ninth Circuit made clear in

7  *Olean* that a putative class containing some uninjured class members may be certified as long as the

8  Rule 23 requirements are met—*see Olean*, 23 F.4th at 669—which they clearly are in this case.  Here,

9  any uninjured class members would be a *de minimis* number of the tens of thousands of class members,

10  based on Dr. Rascher's analysis. Rascher ¶ 76 & n. 52.

11                    **d.      Damages Can Be Proven on a Class-Wide Basis**

12        Plaintiffs also will be able to prove class-wide damages at trial through a class-wide

13  methodology. The damages inquiry at class certification asks whether a proposed damages model is

14  consistent with plaintiffs' theory of liability and whether damages are capable of measurement on a

15  class-wide basis. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013). The Ninth Circuit has

16  explained that "'capable of measurement on a class-wide basis'" means "in the sense that the whole

17  class suffered damages traceable to the same injurious course of conduct underlying plaintiffs' legal

18  theory." *Just Film*, 847 F.3d at 1120 (quoting *Comcast*, 569 U.S. at 29).

19        Because Plaintiffs will establish the element of antitrust injury to all class members through

20  common evidence, Plaintiffs must merely show that their damages methodology is not "so

21  insubstantial as to amount to no method at all." *Meijer, Inc. v. Abbott Lab'ys*, 2008 WL 4065839, at

22  *8 (N.D. Cal. Aug. 27, 2008) (citation omitted). In antitrust cases, once the fact of injury is established,

23

24

25

26        [9] As Dr. Rascher explains, this percentage is likely an overstatement because it assumes that an
      individual who was denied an Award for a purely discretionary reason in at least one semester during
27    the 2022-2023 academic year would have been denied an Award based on discretion in *every semester*
      during the damages period that he or she was eligible to receive an Award. Moreover, this percentage
28    likely underestimates the total class size because it uses only a single year of class members, and it
      includes the discretionary denials of the outlier schools. Rascher ¶ 75.

plaintiffs have a "relaxed burden" of proving the amount of damages. Rule 23(b)(3)—Application of predominance requirement to particular cases-Antitrust-Extent of damages, 1 McLaughlin on Class Actions § 5:37 (18th ed.); *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982) ("[A]n antitrust plaintiff is only obligated to provide the trier-of-fact with some basis from which to estimate reasonably, and without undue speculation, the damages flowing from the antitrust violations.").[10]

This Court emphasized these points in the *NIL Class Cert. Order*, writing that "'[b]ecause antitrust damage calculations necessarily require a determination of what would have been in a 'but for' world, there is an inescapable element of uncertainty in those calculations.'" *NIL Class Cert. Order*, slip. op. at 14 (quoting P. Areeda & H. Hovenkamp, *An Analysis of Antitrust Principles and Their Applications* § 392 (5th ed. 2023 supp.)). "Accordingly, while the plaintiffs must advance a damages model that is capable of measuring damages on a class-wide basis that are consistent with their theory of liability, the damages '[c]alculations need not be exact' at the class certification stage." *NIL Class Cert. Order*, slip op. at 14 (quoting *Comcast*, 569 U.S. at 35).

This Court continued that the "'Supreme Court has repeatedly explained that courts should afford plaintiffs relatively broad leeway in constructing a damages model—at least within the 'just and reasonable inference[s] from the proof of defendants' wrongful acts and their tendency to injure plaintiffs' business.'" *NIL Class Cert. Order*, slip op. at 14 (quoting *In re Glumetza Antitrust Litig.*, 336 F.R.D. at 479 and *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946)). "This is because '[t]he vagaries of the marketplace usually deny us sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation.'" *NIL Class Cert. Order*, slip op. at 14 (quoting *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981)). "'The wrongdoer is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.' Areeda §

---

[10] *See also DRAM Antitrust* , 2006 WL 1530166, at *10 ("[A]t the certification stage of an antitrust class action, plaintiffs have a limited burden with respect to showing that individual damages issues do not predominate." (citation and internal quotation marks omitted)); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 615 (N.D. Cal. 2009) (Wilken, J.) (similar).

392; *see also Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1511 (9th Cir. 1985) ('Defendants . . . should not benefit because their wrongdoing makes it more difficult for the plaintiff to establish the precise amount of its injury. The jury is allowed to act on probable and inferential proof in determining the amount of damages even though such an award may be an approximation.') (internal citation omitted)." *NIL Class Cert. Order*, slip op. at 14.

Moreover, even if the Court were to conclude that individualized damages calculations may be necessary, that conclusion would not defeat class certification where common issues relating to antitrust liability predominate. *See*, *e.g.*, *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 986-88 (9th Cir. 2015) (reaffirming that this proposition "remains the law of this court"); *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("Under *Tyson Foods* and our precedent, therefore, the rule is clear: the need for individual damages calculations does not, alone, defeat class certification.").[11] Ultimately, courts may not "decline to certify a class that will require determination of some individualized questions at trial, so long as such questions do not predominate over the common questions." *Olean*, 31 F.4th at 668. "[D]amages calculations alone cannot defeat class certification." *Pulaski*, 802 F.3d at 987-88.

All that said, Dr. Rascher has created a robust methodology—based on common proof—which he can use at trial to measure damages on a class-wide basis. Rascher ¶¶ 78-91. He employs the "before and after" damages methodology, which this Court explained in the *NIL Class Cert. Order* is "widely accepted as a valid method for determining impact and damages in antitrust cases." Slip op. at 42 (citing *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 145 (C.D. Cal. 2007) (holding that the "before-and-after methodology has been accepted by numerous courts" as a way of determining impact and damages on a class-wide basis (citing cases)).

In Dr. Rascher's model, the "after period" is the period following the *Alston* decision and the NCAA's subsequent change in its rules to permit Academic Achievement Awards. Specifically, Dr. Rascher focuses on the most recent academic year for which data is available, the 2022-23 academic

---

[11] *Accord In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *11 (N.D. Cal. Feb. 21, 2017); *see also Achzinger v. IDS Prop. Cas. Ins. Co.*, 772 Fed. App'x 416, 418 (9th Cir. 2019) ("district court abused its discretion" in denying class certification "by giving more weight to potential individual damages disputes than common questions of liability").

year. Dr. Rascher explains that he can use the total Academic Achievement Award compensation provided by each school in the class during this "after period" year as a benchmark for estimating the compensation that the school would have provided to athletes in the class in the "before period," absent the challenged rules, i.e., in each year during the class damages period (2019-20, 2020-21, and 2021-22). Rascher ¶¶ 83-91.

Dr. Rascher explains why there are reasonable and reliable economic bases—applicable across the class—to use the 2022-23 Academic Achievement Award compensation for schools in the class as an appropriate benchmark "after period" to predict damages during the "before" period. *First*, as explained above, the criteria that each school adopted in the "natural experiment" following the elimination of the challenged rules, is most likely the criteria that it would have used in the but-for world because the same competitive conditions that existed during the 2022-23 academic year, would have existed in the but-for "before" period.  Rascher ¶ 86. *Second*, given that the factors influencing schools' decisions about the amount of Academic Achievement Award compensation to provide each year are the same during the before and after periods, the aggregate amount for each year would be expected to be similar, especially since the NCAA cap for such payments, of $5,980, remains the same in both the before and after period.[12] *Id.*, ¶ 88. *Third*, Dr. Rascher shows that the athlete populations for the schools in the class as a whole were similar in size and makeup during the before and after periods such that the rate of athletes meeting criteria for Academic Achievement Awards would be expected to be similar during the before and after periods. *Id.*, ¶¶ 90, 93-97. As Dr. Rascher explains, "[t]aken together as a set of athletes for the whole school and for the schools corresponding to the class, . . . the distribution of athletes meeting or not meeting the criteria will remain relatively stable. This is an example of the Law of Large Numbers, which says that the average value of a sample of observations from the same population would be expected to be closer and closer to the actual average value of the whole population as there are more and more observations in the sample." *Id.*, ¶ 89.

---

[12] In *Alston*, the Court concluded that $5,980 was an appropriate cap on Academic Achievement Awards because it was the maximum athletic achievement award that any D-I college athlete could receive under the then-NCAA rules. Defendants have not adjusted the cap on athletic achievement awards since this Court's *Alston* decision. *See* NCAA Bylaw 16.1.4.5.

To demonstrate the feasibility of applying his model on a class-wide basis, utilizing the current data available, Dr. Rascher implements his model and estimates the amount schools within the class definition would have paid in Academic Achievement Awards in a given academic year during the "before" period for estimating class-wide damages. Rascher ¶¶ 93-97. He then excludes awards that would have been paid to athletes who are not class members because they were covered by the release of such claims in *Alston* and thus are excluded from the class definition. To adjust this number to an estimated class damages amount, Dr. Rascher excludes the small amount of compensation these schools already paid in Academic Achievement Awards in 2021-22 (so there is no double-counting). *Id.*, ¶¶ 98-100. Dr. Rascher preliminarily estimates total damages to class members during the class period years at $313 million. *Id.*, ¶¶ 101-102. During the merits stage of this case, Dr. Rascher can apply this same methodology to reliably estimate a class-wide damages amount to present to the jury.

In sum, Plaintiffs have surpassed their burden at the class certification stage by presenting "realistic methodologies" to demonstrate class-wide injury (*DRAM*, 2006 WL 1530166, at *8 (quoting *Rubber Chems.*, 232 F.R.D. at 353)) and have presented a damages model that is consistent with their theory of antitrust liability and shows that damages are capable of class-wide measurement. *See Comcast*, 569 U.S. at 29; *Just Film, Inc.*, 847 F.3d at 1120.

## 2.    A Class Action is Superior to Other Available Methods of Adjudication

Certification is appropriate under Rule 23(b)(3) if class treatment "is superior to other available methods for fairly and efficiently adjudicating the controversy." The applicable superiority factors include: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties of managing a class action." Fed. R. Civ. P. 23(b)(3). All four factors demonstrate why this case is best-suited for class treatment.

Application of factors (1) and (3) to this case favors litigating these claims through a class action, as the damages sustained by each individual class member are too low to incentivize them to litigate their claims individually. Rascher ¶¶ 8, 10, 88 (explaining that maximum Academic Achievement Awards in but-for world is $5980 per academic year, and the damages period is three

years); *see* Hubbard Decl. ¶ 10, McCarrell Decl. ¶ 12; *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (first Rule 23 superiority factor supports class treatment when there are class members for whom it would be "uneconomical to litigate individually"); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). This is especially true given how expensive it would be for individual plaintiffs to marshal the information needed to prevail in complex antitrust litigation against well-funded, sophisticated defendants like the NCAA and Power Five Conference Defendants. *See In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 1033 (C.D. Cal. 2015) ("The funds required to marshal the type of evidence, including expert testimony, that is necessary to pursue such a claim against a well-represented corporate defendant would discourage individual class members from filing suit when the expected return is so small."). Factor (3) favors litigating the case as a class action in this forum for the additional reason that this Court has managed related class actions involving similar, complex issues of fact and law with the same defendants. *See Morelock Enterprises, Inc. v. Weyerhaeuser Co.*, 2004 WL 2997526, at *5 (D. Or. Dec. 16, 2004) ("It also is desirable to concentrate this litigation in the District of Oregon, where several related cases have been adjudicated.").

Factor (2)—the extent and nature of similar litigation—favors class certification in this forum as well. Plaintiffs are not aware of any other litigation in the country involving similar antitrust claims related to the NCAA or Conference Defendants' Academic Achievement Award rules. Finally, with respect to factor (4), as this Court knows from its experience with the *O'Bannon* and *Alston* trials, this type of class action—although complex—would not be unduly difficult to manage through the trial set to commence in December 2024. In sum, each of the factors under Fed. R. Civ. P. 23(b)(3) favors this case proceeding as a class action.

## V.      THE COURT SHOULD APPOINT HAGENS BERMAN AND WINSTON & STRAWN AS CLASS COUNSEL

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Hagens Berman and Winston & Strawn have vigorously litigated this case and

1    have extensive experience in handling complex class actions, including antitrust class actions

2    involving athletes, and specifically antitrust class actions for athletes against the NCAA. *See* Berman

3    Decl., Ex. 1 (firm resume); Kessler Decl., Ex. A (firm resume). They also have achieved great success

4    for the athlete classes they have represented against the NCAA in *Alston* and in *House*, two actions

5    related to this one. *See Alston v. NCAA*, 141 S. Ct. 2141 (2021); *In re College Athlete NIL Litig.*, No.

6    20-03919 (N.D. Cal. 2020).

7                             **VI.    CONCLUSION**

8          For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed

9    class under Rules 23(a) and (b)(3).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

011138-11/2439439 V1

1

Dated: February 2, 2024                                    Respectfully submitted,

2

HAGENS BERMAN SOBOL SHAPIRO LLP                            WINSTON & STRAWN LLP

3

By: */s/ Steve W. Berman*                                  By: */s/ Jeffrey L. Kessler*

4

    Steve W. Berman (*pro hac vice*)                        Jeffrey L. Kessler (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)                           David L. Greenspan (*pro hac vice*)

5

HAGENS BERMAN SOBOL SHAPIRO LLP                            Adam I. Dale (*pro hac vice*)
1301 Second Avenue, Suite 2000                             WINSTON & STRAWN LLP

6

Seattle, WA 98101                                          200 Park Avenue
Telephone: (206) 623-7292                                  New York, NY 10166-4193

7

Facsimile: (206) 623-0594                                  Telephone: (212) 294-4698

8

steve@hbsslaw.com                                          Facsimile: (212) 294-4700
emilees@hbsslaw.com                                        jkessler@winston.com

9

                                                           dgreenspan@winston.com
Benjamin J. Siegel (SBN 256260)                            aidale@winston.com

10

HAGENS BERMAN SOBOL SHAPIRO LLP

11

715 Hearst Avenue, Suite 202                               Jeanifer E. Parsigian (SBN 289001)
Berkeley, CA 94710                                         WINSTON & STRAWN LLP

12

Telephone: (510) 725-3000                                  101 California Street, 34th Floor
Facsimile: (510) 725-3001                                  San Francisco, CA 94111

13

bens@hbsslaw.com                                           Telephone: (415) 591-1000
Facsimile: (415) 591-1400

14

                                                           jparsigian@winston.com

15

*Counsel for Plaintiffs and the Proposed Class*

16

                                                           *Counsel for Plaintiffs and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
No. 4:23-CV-01593-CW

1

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

2

3     Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in

4  the filing of this document has been obtained from the signatories above.

5

            _____/s/ Steve W. Berman_____

6                     STEVE W. BERMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

011138-11/2439439 V1

# APPENDIX A
## [SUBMITTED UNDER SEAL]

011138-11/2439298 V1