Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie A. Verdoia (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs and
the Proposed Class*

Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Sofia Arguello (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com
sarguello@winston.com
aidale@winston.com

Jeanifer E. Parsigian (SBN 289001)
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CHUBA HUBBARD and KEIRA MCCARRELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; ATLANTIC COAST CONFERENCE; THE BIG TEN CONFERENCE, INC.; THE BIG 12 CONFERENCE, INC.; PAC-12 CONFERENCE; and SOUTHEASTERN CONFERENCE,<br><br>Defendants. | Case No. 4:23-cv-01593-CW<br><br>**NOTICE OF MOTION AND PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  September 5, 2024<br>Time:  2:30 p.m.<br>Judge:  Hon. Claudia Wilken<br>Courtroom: 1, 4th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on September 5, 2024 or as soon thereafter as the matter may be heard by the Honorable Claudia Wilken of the United States District Court of the Northern District of California, located at 1301 Clay Street, Courtroom 1 – 4th Floor, Oakland, CA 94612, Plaintiffs will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 23 for an order:

1. Preliminarily approving a proposed class action settlement with National Collegiate Athletic Association, Pac-12 Conference, The Big Ten Conference, Inc., The Big 12 Conference, Inc., Southeastern Conference, and Atlantic Coast Conference (collectively, "Defendants");

2. Provisionally certifying the proposed Settlement Class;

3. Appointing Hagens Berman Sobol Shapiro LLP and Winston & Strawn LLP as Settlement Class Counsel;

4. Directing notice to the proposed Settlement Class and approving the manner and form of Notice and proposed Distribution Plan to Settlement Class members;

5. Appointing Chuba Hubbard and Keira McCarrell as representatives for the proposed Settlement Class and for the purposes of disseminating notice;

6. Authorizing retention of Verita Global as Settlement Administrator; and

7. Scheduling a final hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and whether the proposed Settlement Class should be certified (the "Final Fairness Hearing").

This motion is based on this Notice of Motion and Motion for Preliminary Approval of Settlement with Defendants, the following memorandum of points and authorities, the Settlement Agreement filed herewith, the pleadings and papers on file in this action, and such other matters as the Court may consider.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   PROCEDURAL HISTORY.......................................................................... 2

III.  THE SETTLEMENT ................................................................................... 2

    A.  The Settlement Negotiations........................................................................2

    B.  The Proposed Settlement Class....................................................................3

    C.  The Settlement Consideration and Release of Claims ................................3

    D.  Distribution Plan ..........................................................................................4

    E.  Notice Plan...................................................................................................4

IV.  LEGAL STANDARD .................................................................................. 5

V.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...................... 6

    A.  The Settlement Is Fair, Reasonable, and Adequate ..................................6

         1.    The Class Has Been Zealously Represented................................. 6

         2.    The Settlement Agreement Resulted From Arm's-Length Negotiations ............... 7

         3.    The Settlement Provides Substantial Monetary Relief for Eligible Class Members ......................... 8

         4.    The Settlement Treats Class Members Equitably................................... 9

         5.    The Settlement Satisfies the Factors Set Forth in the Northern District of California's Procedural Guidance........................ 10

         6.    Counsel Will Request Reasonable Class Representative Service Awards .......... 11

    B.  The Proposed Settlement Class Satisfies Rule 23 and Merits Certification ....................12

         1.    Numerosity................................................................................... 12

         2.    Commonality................................................................................ 13

         3.    Typicality .................................................................................... 13

         4.    Adequacy ..................................................................................... 14

         5.    The Requirements of Rule 23(b)(3) Are Met ...................................... 15

i

PLS.' MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT
NO. 4:23-CV-01593-CW
2024-07-26 FINAL Hubbard - Mot. for Prelim. Approval of Settlement(2686187.1)docx 7/26/2024

a.  Common Questions of Fact or Law Predominate.......................................... 15

b.  The Class Action Mechanism Is Superior to Any Other Method of
    Adjudication............................................................................................... 15

C.  The Court Should Approve the Appointment of Class Counsel........................................16

D.  Proposed Schedule for Notice and Final Approval...............................................17

VI.   CONCLUSION.............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .......................................................................................7

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2015 WL 9266493 (N.D. Cal. Dec. 17, 2015)............................................................9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .....................................................................................17

*In re College Athlete NIL Litig.*,
  2023 WL 8372787 (N.D. Cal. Nov. 3, 2023) .......................................................14, 15

*In re ConAgra Foods, Inc.*,
  90 F.Supp.3d 919 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods,
  Inc.*, 674 F. App'x 654 (9th Cir. 2017), *and aff'd sub nom. Briseno v. ConAgra
  Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ..............................................................16

*Corzine v. Whirlpool Corp.*,
  2019 WL 7372275 (N.D. Cal. Dec. 31, 2019)............................................................6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  2013 WL 12333442 (N.D. Cal. Jan. 8, 2013), *report and recommendation
  adopted*, 2014 WL 12879520 (N.D. Cal. June 27, 2014) ..........................................8

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019).............................................................9

*Garner v. State Farm Mut. Auto Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................8

*Gatchalian v. Atl. Recovery Sols., LLC*,
  2023 WL 8007107 (N.D. Cal. Nov. 16, 2023) ...........................................................6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores,
  Inc. v. Dukes*, 564 U.S. 338 (2011)....................................................7, 13, 14, 15

*In re High-Tech Emp. Antitrust Litig.*,
  985 F. Supp. 2d 1167 (N.D. Cal. 2013) ......................................................12, 13, 14

iii

PLS.' MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 4:23-CV-01593-CW
2024-07-26 FINAL Hubbard - Mot. for Prelim. Approval of Settlement(2686187.1)docx 7/26/2024

*Hubbard v. RCM Techs. (USA), Inc.*,
    2020 WL 6149694 (N.D. Cal. Oct. 20, 2020)..........................................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ..................................................................................................12

*Lilly v. Jamba Juice Co.*,
    2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)...........................................................................5

*In re Lithium Ion Batteries Antitrust Litig.*,
    2020 WL 7264559 (N.D. Cal. Dec. 10, 2020)...........................................................................8

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ................................................................................................15

*Maree v. Deutsche Lufthansa AG*,
    2023 WL 2563914 (C.D. Cal. Feb. 13, 2023)..........................................................................15

*In re Med. X-Ray Film Antitrust Litig.*,
    1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)...............................................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ....................................................................................................7

*Mendez v. C-Two Grp., Inc.*,
    2017 WL 1133371 (N.D. Cal. Mar. 27, 2017).......................................................................5, 6

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*,
    375 F. Supp. 3d 1058 (N.D. Cal. 2019), *aff'd sub nom. NCAA v. Alston*, 594 U.S.
    69 (2021)......................................................................................................................1, 3, 7, 10

*In re NCAA Grant-in-Aid Cap Antitrust Litigation*,
    No. 14-md-02541-CW (N.D. Cal. Dec. 6, 2017).......................................................................3

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ...............................................................12, 13, 14

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016).............................................................................................13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ...................................................................................................14

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .............................................................................................10, 11

*Pecover v. Elec. Arts, Inc.*
    2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) .........................................................................13

iv

*Ramirez v. Trans Union, LLC*,
   2022 WL 2817588 (N.D. Cal. July 19, 2022)............................................................5

*Ramirez v. TransUnion, LLC*,
   2017 U.S. Dist. LEXIS 184563 (N.D. Cal. Nov. 7, 2017).......................................11

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .............................................................................7, 11

*Salazar v. Driver Provider Phoenix LLC*,
   2024 WL 2923718 (D. Ariz. June 10, 2024) ...........................................................9

*Smith v. Am. Greetings Corp.*,
   2015 WL 4498571 (N.D. Cal. July 23, 2015)...........................................................6

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)...................................................................................9

*B.K. ex rel. Tinsley v. Snyder*,
   922 F.3d 957 (9th Cir. 2019) ................................................................................13

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..............................................................................................12

**Other Authorities**

Fed R. Civ. P. 23 ....................................................................................... *passim*

Manual for Complex Litigation (Fourth) § 21.632 (2004) ..........................................5

*Procedural Guidance for Class Action Settlements*, U.S. DISTRICT COURT N.D. CAL.
   (modified Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-
   guidance-for-class-action-settlements/ ...............................................9, 10, 11, 16

2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:63 (6th ed.
   2022) ....................................................................................................................12

v

PLS.' MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT
NO. 4:23-CV-01593-CW
2024-07-26 FINAL Hubbard - Mot. for Prelim. Approval of Settlement(2686187.1)docx 7/26/2024

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

Plaintiffs seek preliminary approval of a Settlement Agreement ("SA" or "Agreement") that provides for payment of nearly two-thirds of the Settlement Class's single damages claims. The Agreement is the result of extensive litigation and arm's-length negotiations between the parties. Defendants agree to pay **$200,000,000.00** into a non-reversionary fund, which (after deduction of court-approved fees and expenses) will be disbursed to college athletes who competed on a Division I athletic team at any time between April 1, 2019 and September 15, 2024 and would have earned Academic Achievement Awards (or "Awards"), absent Defendants' rules and agreements prohibiting such compensation, which this Court previously struck down. *See In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058 (N.D. Cal. 2019), *aff'd sub nom. NCAA v. Alston*, 594 U.S. 69 (2021).

Plaintiffs also propose a comprehensive notice program designed by experienced Settlement Administrator Verita Global. *See* Declaration of Carla Peak ("Peak Decl.") & attached exhibits, concurrently submitted herewith. The proposed notice program includes direct email or postcard notice and publication notice to more than 80% of potential Settlement Class members. Peak Decl. ¶ 16. The Administrator also will deliver a state-of-the-art publication notice program, including notice via digital and social media, national print media, and earned media. The Administrator will maintain a case-specific website to provide Settlement Class members with access to information about the Settlement and notice program, and to provide a secure online mechanism for Settlement Class members to review their estimated settlement payments and to make claims on the website.

For these reasons, Plaintiffs respectfully request an order: (1) preliminarily approving the Settlement; (2) provisionally certifying the proposed Settlement Class; (3) appointing Hagens Berman Sobol Shapiro LLP and Winston & Strawn LLP as Settlement Class Counsel; (4) directing notice to the proposed Settlement Class and approving the proposed manner and form of notice; (5) appointing Chuba Hubbard and Keira McCarrell (the "Named Plaintiffs") as representatives for the proposed Settlement Class for the purposes of disseminating notice; (6) authorizing retention of Verita Global as Settlement Administrator; and (7) scheduling a final hearing to determine whether the Settlement

1

PLS.' MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 4:23-CV-01593-CW
2024-07-26 FINAL Hubbard - Mot. for Prelim. Approval of Settlement(2686181.1)docx 7/26/2024

is fair, reasonable, and adequate under Rule 23(e)(2) and whether the proposed Settlement Class should be certified (the "Final Fairness Hearing").

## II.      PROCEDURAL HISTORY

Plaintiffs filed this action on April 4, 2023, and have litigated extensively in support of their claims. Since late November 2023, Defendants have submitted summaries of Academic Achievement Award policies for over 100 schools as well as copious data on the amounts and number of Awards many schools have provided to college athletes. Plaintiffs' economic expert, Dr. Daniel Rascher, has submitted multiple expert reports to date and has worked extensively to analyze the schools' Academic Achievement Award data and policies—often in disparate formats and covering multiple years—to develop a reliable and predictive model of class members' damages. *See In re College Athlete NIL Litig.* ("*House*") (N.D. Cal. Case No. 4:20-cv-03919 CW), Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Preliminary Settlement Approval ("Berman Decl.") ¶ 3.

Plaintiffs and Defendants also worked tirelessly to meet the Court's fast-paced case schedule, with trial scheduled for December 2024. Full briefing on class certification was accomplished in less than six months. When the parties reached an agreement on settlement, Plaintiffs' motion for class certification, Defendants' opposition to class certification, and Plaintiffs' reply in support of class certification had all been filed. *See id.*; *see also* ECF Nos. 149, 164, 176.

## III.      THE SETTLEMENT

### A.      The Settlement Negotiations

Professor Eric Green—a highly regarded mediator who facilitated mediations between the parties in *Alston*—has been involved in negotiations for nearly a year. The parties' extensive negotiations have occurred over the course of several meetings in person, by video, and by telephone, among scores of attorneys representing the parties. The Settlement Agreement is the product of hard bargaining by experienced counsel, who engaged with numerous difficult, time-consuming issues before reaching agreement. Berman Decl. ¶¶ 4–9.

While the negotiations concerned the claims in this case and in *House*, the discussions were sequenced and compartmentalized. *Id.* ¶¶ 8–9. Plaintiffs made a demand specific to this matter, factoring in the damages estimate, procedural posture, and litigation risks. *Id.* ¶ 8. Mediator Eric Green

facilitated and monitored the talks. *Id.* ¶¶ 4, 6, 9.

**B.**     **The Proposed Settlement Class**

The proposed class is the following:

> All current and former NCAA athletes who competed on a Division I athletic team at any time between April 1, 2019 and September 15, 2024 who would have met the requirements for receiving an Academic Achievement Award under the criteria established by their schools for qualifying for such an Award. The Class excludes individuals who released their damages claims as part of the Settlement Agreement in *In re NCAA Grant-in-Aid Cap Antitrust Litigation*, No. 14-md-02541-CW (N.D. Cal. Dec. 6, 2017), ECF No. 746.

> The Class excludes the officers, directors, and employees of Defendants. The Class also excludes all judicial officers presiding over this action and their immediate family members and staff.

*See* ECF No. 1 at 24–25; *see also* Stipulation & Settlement Agreement ¶ 1(c) ("SA") (Ex. 1 to the Declaration of Jeffrey L. Kessler ("Kessler Decl."), concurrently submitted herewith).

**C.**     **The Settlement Consideration and Release of Claims**

Under the Settlement Agreement, Defendants will pay $200,000,000.00 in total. SA ¶¶ 1(ff), 2. As calculated by Plaintiffs' expert economist, Dr. Rascher, this amounts to nearly two-thirds, or 63.9%, of the Settlement Class's estimated single damages. *See* Declaration of Daniel Rascher ("Rascher Decl."), concurrently submitted herewith, ¶ 9. At class certification, Dr. Rascher developed a model based on information provided by the Defendants regarding NCAA member schools to predict which schools would have provided Academic Achievement Awards and the total amount of such Awards during the class damages period (*i.e.*, 2019-2020, 2020-2021, and 2021-2022) absent Defendants' restraints.[1] *See id.* ¶ 3.

Once the Settlement Agreement is final and effective, the Named Plaintiffs and Settlement Class members who have not opted out will release all claims of any type or nature whatsoever that were raised or could have been alleged in this litigation, with respect to all conduct prior to final approval of the Settlement Agreement, arising from Defendants' rules and agreements to prohibit

---

[1] Defendants' restraints were enjoined before the 2021-2022 academic year, and some Division I schools offered Academic Achievement Awards that year. By the 2022-2023 academic year, payment of Academic Achievement Awards became common among Division I schools, particularly in the Power Five Conferences.

1   NCAA member schools from offering Academic Achievement Awards, which were previously found

2   to violate the federal antitrust laws. *See* SA ¶¶ 1(cc), 17–20; *In re NCAA Athletic Grant-in-Aid Cap*

3   *Antitrust Litig.*, 375 F. Supp. 3d 1058, *aff'd sub nom. NCAA v. Alston*, 594 U.S. 69.

### D.    Distribution Plan

5   The Distribution Plan of the non-reversionary Settlement Fund will allocate each Settlement

6   Class member's recovery from the Gross Settlement Fund based upon the relative losses each class

7   member suffered due to Defendants' alleged misconduct (*i.e.*, Defendants' prior rules barring

8   Academic Achievement Awards). The notice plan detailed below is a well-established and effective

9   means of distributing the Gross Settlement Fund to class members. *See infra*, Section III.E. In addition,

10  the claims process will include a standard claim form, which can be filled out on the settlement website

11  or downloaded, and which is attached to the Peak Declaration submitted herewith. *See* Peak Decl., Ex.

12  6. The questions in the claim form elicit simple information that is necessary to confirm a class

13  member's eligibility to receive funds from the Gross Settlement Fund, and the respective amounts of

14  such claims. Based on Verita Global's experience with settlements affecting large, close-knit groups

15  of individuals with sizable payment amounts and significant news coverage, the estimated claim rate

16  is 30%. *Id.* ¶ 45.

17  As part of the Distribution Plan, claimants will receive a proportional distribution from the

18  Gross Settlement Fund, which will be based on a simple formula that is a function of the length of

19  their athletic participation during the class period, the identity of the school they participated in athletic

20  activity, the 2022-2023 Academic Achievement Award criteria of the school (or schools) they

21  attended, and their individual fulfillment of their institution's (or institutions') Award criteria.

22  Settlement Class members will be required to submit a valid Claim Form to receive payment because

23  inclusion within the class and the amount of payment is dependent upon academic performance and

24  meeting specific eligibility requirements that will be verified through the claims process. *Id.* ¶ 44.

### E.    Notice Plan

26  Plaintiffs have attached to this motion a declaration from the Settlement Administrator, Verita

27  Global, that proposes a comprehensive notice program and includes proposed notices and a sample

28  claim form. *See generally* Peak Decl.; *see also id.* at Exs. 1–6. The proposed notice program provides

individual direct notice to all reasonably identifiable members of the proposed Settlement Class via email and/or mail (*i.e.*, postcard), along with a dedicated website and toll-free telephone line where class members can learn more about their rights and options pursuant to the terms of the Settlement. *See id.* ¶¶ 13–42. Defendants have requested recent contact information for all Settlement Class members from their schools. *Id.* ¶ 15. Verita Global will also employ additional methods to help ensure that as many class members as possible receive notice via email or postcard. *See id.* ¶¶ 19–24. For example, prior to distributing email notice, Verita Global will undertake an email updating process to help ensure the accuracy of recipient email addresses. *See id.* ¶ 19.

The content of the direct notice emails will be the Email Notice attached to the Peak Declaration. *See* Peak Decl. Ex. 1. The proposed Postcard Notice is attached to Peak Declaration as Exhibit 2. These notice documents will, *inter alia*, inform class members about the total settlement and the proposed allocation plan for settlement funds.

Verita Global will establish a case-specific toll-free hotline and case-specific website, with the domain reserved as collegeathletecompensation.com ("Settlement Website"). *See id.* ¶¶ 39, 41. On the Settlement Website, class members will be able to view general information about this class action, read relevant Court documents, and review important dates and deadlines pertinent to the Settlement. For example, the detailed long-form notice will be available for download on the website. *See id.* ¶ 39, Ex. 5. The Settlement Website will be designed to be user-friendly and make it easy for class members to find information about the Settlement, and it will also have a "Contact Us" page where they can send an email with any additional questions to a dedicated email address. *See id.* ¶¶ 39, 42.

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims. Approval of a settlement is a multi-step process, beginning with (i) preliminary approval, which then allows (ii) notice to be given to the class and objections to be filed, after which there is (iii) a motion for final approval and fairness hearing. *Ramirez v. Trans Union, LLC*, 2022 WL 2817588, at *3 (N.D. Cal. July 19, 2022); s*ee* Manual for Complex Litigation (Fourth) § 21.632 (2004). Preliminary approval is thus not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls within the "range of possible approval."

*Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *6 (N.D. Cal. Mar. 18, 2015) (citation and internal quotation marks omitted). Preliminary approval "establishes an initial presumption of fairness" such that notice may be given to the class. *See Mendez v. C-Two Grp., Inc.*, 2017 WL 1133371, at *3 (N.D. Cal. Mar. 27, 2017) (citation and internal quotation marks omitted). The "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Lilly*, 2015 WL 1248027, at *6 (citation and internal quotation marks omitted).

Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement: (i) appears to be the product of serious, informed, non-collusive negotiations; (ii) has no obvious deficiencies; (iii) does not improperly grant preferential treatment to class representatives or segments of the class; and (iv) falls with the range of possible approval. *See Mendez*, 2017 WL 1133371, at *3. As is the case here, when proposed counsel are experienced and support the settlement, which was the result of arm's-length negotiations, and relevant discovery has been conducted, there is a presumption that the agreement is fair. *See Gatchalian v. Atl. Recovery Sols., LLC*, 2023 WL 8007107, at *8 (N.D. Cal. Nov. 16, 2023); *Corzine v. Whirlpool Corp.*, 2019 WL 7372275, at *5 (N.D. Cal. Dec. 31, 2019). [2] All factors weigh in favor of preliminary approval here.

## V.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Settlement Is Fair, Reasonable, and Adequate

#### 1.    The Class Has Been Zealously Represented

Plaintiffs' counsel worked with extraordinary speed at the Court's request to aggressively pursue and analyze a massive record of information from all Power Five Conference member schools and many additional Division I schools, including voluminous data on each school's Academic Achievement Award criteria and recipients. Plaintiffs retained a prominent economic expert and fully briefed a motion for class certification less than six months after the start of discovery. *See* Berman Decl. ¶ 3; *see also* ECF Nos. 149, 164, 176. Named Plaintiffs likewise have devoted many hours to these cases by, for example, consulting with counsel, reviewing drafts of documents, responding to

---

[2] *See also Smith v. Am. Greetings Corp.*, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015) ("The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class.").

6

PLS.' MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT
NO. 4:23-CV-01593-CW
2024-07-26 FINAL Hubbard - Mot. for Prelim. Approval of Settlement(2686187.1)docx 7/26/2024

discovery requests, and preparing for and attending depositions. Plaintiffs' counsels' zealous representation supports preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

The Agreement is the product of a thorough assessment and evaluation of the strengths and weaknesses of Plaintiffs' case. *See* Kessler Decl. ¶¶ 3–4. The parties have extensively litigated these issues for years. *See id.* The Agreement also reflects the risks of continuing to litigate, including as to the outcome of Plaintiffs' pending motion seeking class certification, which Defendants vigorously opposed, and risks that Plaintiffs must always consider when preparing for trial. Plaintiffs believe the class has meritorious claims but acknowledge that there are always risks inherent in litigation. *See id.* None of this mitigates Plaintiffs' zealous representation.

### 2. The Settlement Agreement Resulted From Arm's-Length Negotiations

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The proposed Settlement Agreement here arises out of extended, informed, arm's-length negotiations between experienced counsel for the parties. *See* Kessler Decl. ¶¶ 3–4. The parties reached agreement after over a year of litigation and discovery in this matter, and over five years after this Court rendered its decision in *Alston*. This "significant investigation, discovery and research" weighs in favor of finding the settlement was adequately informed. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Further, counsel for both sides are experienced and recognized nationally for competently handling large-scale, high-profile antitrust class action litigation, including the *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litigation* which, after a long trial, struck down the rules prohibiting Academic Achievement Awards—a decision affirmed by the Supreme Court after Defendants appealed their trial loss. *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058, *aff'd sub nom. NCAA v. Alston*, 594 U.S. 69. In addition to these non-collusive negotiations between sophisticated sets of counsel based on meaningful investigations and discovery, the parties were assisted by Professor Green, a widely-respected, neutral mediator—a factor further "weighing in favor of a finding of non-collusiveness." *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011); Kessler Decl. ¶ 7; Berman Decl. ¶¶ 4–9.

The substance of the Settlement Agreement also underscores that it is not the result of any

7

collusion or conflict. Where a settlement is reached prior to class certification, as is the case here, courts must be "particularly vigilant not only [to look] for explicit collusion, but also for more subtle signs," or any indication that the pursuit of the interests of the class counsel or the named plaintiffs "infect[ed]" the negotiations. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946–47; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Courts look for three factors in evaluating whether collusion exists: (i) a disproportionate distribution of the settlement fund to counsel; (ii) the presence of a "clear sailing" arrangement, providing for the payment of attorneys' fees separate and apart from class funds; and (iii) when the parties arrange for unawarded fees to revert to defendants rather than be added to the class fund. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947. None of these are present here.

The Settlement Agreement is a common fund settlement with no possibility of reversion. *See* SA ¶ 8. As described above, distribution to the Named Plaintiffs and class members is based on the Distribution Plan specified in the Agreement (*see supra*, Section III.D), and Plaintiffs' counsels' fees must be approved by this Court. SA ¶¶ 5, 22. The funds will be used to cover costs and fees. *Id.* ¶¶ 21–22. There is no "clear sailing" provision, no payment of fees separate and apart from the class funds, and no "kicker" provision that would allow unawarded fees to revert to the Defendants. *See generally* SA. The proposed class notices also inform class members that Settlement Class Counsel will make a reasonable request for attorneys' fees and costs from the Gross Settlement Fund, which must be approved by the Court. *See* Peak Decl. Exs. 1–5. The Settlement Agreement is entitled to a presumption of fairness.

### 3. The Settlement Provides Substantial Monetary Relief for Eligible Class Members

A plan of distribution of class settlement funds must meet the "fair, reasonable and adequate" standard that applies to approval of class settlements. *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, at *8 (N.D. Cal. Apr. 22, 2010). A distribution plan that compensates class members based on the type and extent of their injuries is generally considered reasonable. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *77 (N.D. Cal. Jan. 8, 2013),

8

PLS.' MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT
NO. 4:23-CV-01593-CW
2024-07-26 FINAL Hubbard - Mot. for Prelim. Approval of Settlement(2686187.1)docx 7/26/2024

*report and recommendation adopted*, 2014 WL 12879520 (N.D. Cal. June 27, 2014). As described above (*see supra*, Section III.D), class members who are eligible to recover under the Settlement Agreement—based on the length of their athletic participation during the class period, the identity of the school they participated in athletic activity, the 2022-2023 Academic Achievement Award criteria of the school (or schools) they attended, and their individual fulfillment of their institution's (or institutions') Award criteria—will receive proportional distributions from the Gross Settlement Fund.

Moreover, the total recovery of approximately 63.9% of the Settlement Class's estimated single damages (*see* Rascher Decl. ¶ 9) is more than fair, reasonable, and adequate—it is extraordinary. Indeed, a court in this district recently described an antitrust class recovery of just 11.7% of single damages as an "excellent" result. *In re Lithium Ion Batteries Antitrust Litig.,* 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 324 (3d Cir. 2011) (affirming approval of antitrust settlement providing recovery of 12.5% of single damages for one settlement class and 22.5% for another); *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *6 (E.D.N.Y. Aug. 7, 1998) (finally approving settlements that equaled 17% of "best possible recovery" and citing prior decision approving settlements of 6.4-11% of the potential recovery).

### 4.     The Settlement Treats Class Members Equitably

In addition to evaluating the adequacy of the Settlement overall, the Court should consider whether the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). A plan of allocation is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *7 (N.D. Cal. Dec. 17, 2015) (citation and internal quotation marks omitted). Courts routinely uphold allocation plans that, as the one proposed here, divide settlement funds based on a damages expert's formula. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *3, 12 (N.D. Cal. July 22, 2019) (granting final approval of settlement that distributed settlement funds to "claimants on a *pro rata* basis based on [] formulas tied to claimants' potential damages and developed by [] expert"); *Salazar v. Driver Provider Phoenix LLC*, 2024 WL 2923718, at *3, 7–8 (D. Ariz. June 10, 2024) (granting preliminary approval of settlement that allocated funds to class members "based on an allocation formula created in consultation with

9

Plaintiffs' damages expert").

### 5. The Settlement Satisfies the Factors Set Forth in the Northern District of California's Procedural Guidance

The Northern District of California's Procedural Guidance for Class Action Settlements ("Procedural Guidance")[3] instructs parties to address certain factors for preliminary approval. Several of these factors are addressed elsewhere in this motion, and therefore are not repeated here. In addition, several of the factors are inapplicable here. Specifically, the settled claims are the same as those in the complaint and there are no other cases that will be affected by the settlement. *See* Procedural Guidance §§ 1(a)–(d).

In addition, Plaintiffs' counsel selected a settlement administrator through a competitive bidding process. Kessler Decl. ¶ 8; Berman Decl. ¶ 10. Plaintiffs sent a Request for Proposal ("RFP") to three other leading settlement administrators, in addition to Verita Global. Kessler Decl. ¶ 8; Berman Decl. ¶ 10. The RFP included a carefully drafted template for the candidates to complete. Berman Decl. ¶ 10. It required that each firm make the same assumptions about the notice and administration of the settlement, ensuring an apples-to-apples comparison. *Id.* All four administrators responded with the completed template, as well as additional information explaining their proposals. *Id.* Only after this competitive bidding process did Plaintiffs' counsel—in consultation with Defendants—choose Verita Global as providing the best value for the Settlement Class. Kessler Decl. ¶ 8; Berman Decl. ¶ 10. Verita Global offered competitive pricing, with the advantage of having served as the administrator for the comparable settlement achieved in the *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litigation*. Berman Decl. ¶ 10. Verita Global has also previously handled the litigation notice in the *House* case. *See id.*

In the last two years, Verita Global has not worked with Settlement Class Counsel as a settlement administrator. Peak Decl. ¶ 9 Verita Global has worked with Hagens Berman Sobol Shapiro LLP on two other cases more than two years ago and with Winston & Strawn on the provided notice to the certified litigation classes in *House*. *See id.* Verita Global estimates total administration costs will be approximately $100,000, a *de minimis* percentage of the $200 million Gross Settlement Fund.

---

[3] *Procedural Guidance for Class Action Settlements*, U.S. DISTRICT COURT N.D. CAL. (modified Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

Peak Decl. ¶ 46. The funds for administration will be paid from the Settlement Fund. *See* SA ¶ 1(u).

Finally, the Procedural Guidance asks for certain information about the fees and costs that Plaintiffs' counsel intends to request. Procedural Guidance § 6. As explained in the Settlement Agreement, Settlement Class Counsel intends to submit an application for (a) an award of attorneys' fees, plus (b) reimbursement of expenses incurred in connection with prosecuting the Action, plus (c) any interest on such attorneys' fees and expenses (until paid), as appropriate, and as may be awarded by the Court. These distributions will be requested from the Settlement Fund. *See* SA ¶¶ 2, 21–22. In a class action, it is common that attorneys' fees and costs are awarded from damages settlement funds. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949, 955 (9th Cir. 2015) (when a percentage-of-the fund method is used to award fees, the Ninth Circuit has established a benchmark percentage of 25% to be used as the "starting point" for analysis). Plaintiffs' counsel will seek no more than 20% of the Settlement Fund, plus reimbursement of expenses. Kessler Decl. ¶ 12. Defendants may challenge the amount requested. SA ¶ 21. Any fee award requested will be subject to the Court's approval, and will be paid out over the same 10-year period as the Settlement Fund. *See id.* ¶¶ 21–22. As the notice documents describe, a motion for fees and costs will be filed 45 days prior to the proposed final approval hearing, as required by this Court. *See* Procedural Guidance § 9; *see* Peak Decl. Exs. 1–5. Although the attorneys' fees are ongoing in this case, as of the date of this Motion, the lodestar for Plaintiffs' counsel is approximately $4.24 million, with hours totaling approximately 5,491. Expenses on this case are also ongoing, but are approximately $438,500. Kessler Decl. ¶¶ 9, 11. This information will be updated in any motion for reimbursement of fees and costs.

### 6. Counsel Will Request Reasonable Class Representative Service Awards

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 (quoting *Rodriguez*, 563 F.3d at 958). Based on their contributions and commitments, the Settlement Agreement contemplates a $50,000 award to each Named Plaintiff. There is no brightline minimum or maximum for service awards, and courts have awarded service fees in the amount sought here. *See Ramirez v. TransUnion, LLC*, 2017 U.S. Dist. LEXIS 184563, at *3–5 (N.D.

11

PLS.' MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT
NO. 4:23-CV-01593-CW
2024-07-26 FINAL Hubbard - Mot. for Prelim. Approval of Settlement(2686187.1)docx 7/26/2024

Cal. Nov. 7, 2017) (granting $75,000 service award).

The Named Plaintiffs have been actively involved in this case from its inception. They provided documents. Defendants deposed both of them at length, requiring them to devote hours to deposition prep with counsel as well as for the depositions themselves. Their depositions were very thorough and time-consuming. By being publicly named, the Named Plaintiffs took risks, including reputational repercussions. Based on these factors—and considering the results of this Settlement— the proposed service awards are justified.

**B.     The Proposed Settlement Class Satisfies Rule 23 and Merits Certification**

Preliminary approval also requires the Court to determine whether it is likely to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Rule 23(a) sets forth four prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a). As the proposed Settlement Class seeks monetary damages, the requirements of Rule 23(b)(3) must also be met. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) permits class certification where common questions of law and fact "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

While the Court must assess all applicable requirements of Rule 23, they are "applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). "A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *Id.* at 558; *see also* 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:63 (6th ed. 2022) ("Courts . . . regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").

**1.     Numerosity**

The numerosity requirement is generally satisfied if the class contains at least 40 members. *See Hubbard v. RCM Techs. (USA), Inc.,* 2020 WL 6149694, at *1 (N.D. Cal. Oct. 20, 2020). The

12

1  Settlement Class here has tens of thousands of members, clearly satisfying this requirement. *See*

2  Expert Class Certification Reply Rpt. of Daniel A. Rascher (ECF No. 179-3) ¶ 120.[4]

3  ### 2.  Commonality

4  To satisfy the commonality requirement, "[e]ven a single [common] question will do" (*Wal-*

5  *Mart Stores, Inc.*, 564 U.S. at 359), and "courts have consistently held that the very nature of a

6  conspiracy antitrust action compels a finding that common questions of law and fact exist." *In re High-*

7  *Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) (citation and internal

8  quotation marks omitted); *see In re NCAA Student-Athlete Name & Likeness Licensing Litig.*

9  ("*O'Bannon*"), 2013 WL 5979327, at *4 (N.D. Cal. Nov. 8, 2013) ("[A]ll that Rule 23(a)(2) requires

10  is 'a single ***significant*** question of law or fact.'") (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 2013

11  WL 5383225, at *3 (9th Cir. 2013) (emphasis in original)). Here, there are several issues of law and

12  fact that are common to the class, including: (i) whether Defendants are precluded from contesting

13  liability by principles of collateral estoppel, (ii) (if not) whether there has been an unlawful conspiracy

14  that caused anticompetitive effects in relevant markets, (iii) whether the class has suffered antitrust

15  injury, and (iv) the appropriate measure of damages. Defendants' affirmative defenses—including that

16  the challenged rules "did not unreasonably restrain trade, but were lawful, justified, and

17  procompetitive"[5]—further support a finding of commonality. *See, e.g.*, *O'Bannon*, 2013 WL 5979327,

18  at *4 ("whether the NCAA's procompetitive justifications for its conduct are legitimate" was common

19  question).

20  ### 3.  Typicality

21  Typicality is met as well. To meet Rule 23(a)(3)'s typicality requirement, the Named Plaintiffs'

22  claims must be "reasonably coextensive with those of absent class members; they need not be

23  substantially identical." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 969–70 (9th Cir. 2019) (quoting

24  *Hanlon*, 150 F.3d at 1020). "In antitrust cases, typicality usually will be established by plaintiffs and

---

25  [4] As explained in Rascher's Reply Report, the estimated number of class members varies by each year

26  of the class period: 26,326 (2019-2020), 27,519 (2020-2020), and 27,968 (2021-22), with the expectation that the number for each year will include some athletes that are also included in the other class years.

27  [5] *See* NCAA Answer (ECF No. 89) at 17; ACC Answer (ECF No. 82) at 16; Big Ten Answer (ECF

28  No. 81) at 16; Big 12 Answer (ECF No. 83) at 18; Pac-12 Answer (ECF No. 87) at 17; SEC Answer (ECF No. 78) at 13.

all class members alleging the same antitrust violations by defendants." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 274 (N.D. Cal. 2016) (quoting *Pecover v. Elec. Arts, Inc.* 2010 WL 8742757, at *11 (N.D. Cal. Dec. 21, 2010)); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d at 1181 (same).

Here, the Named Plaintiffs allege the same antitrust conspiracy violation and the same basis for injury, namely that Defendants' previous rules restricting Academic Achievement Awards suppressed competition and artificially reduced the compensation the class members would have received but for the restraints. The Named Plaintiffs—both former NCAA Division I college athletes—were subject to Defendants' restraints barring Academic Achievement Awards and would have earned such Awards but for the restraints because they met the criteria subsequently established by their schools.

### 4.    Adequacy

The adequacy requirement is also met because the Named Plaintiffs and their experienced counsel have prosecuted, and will continue to prosecute, the action vigorously. *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d at 1181; *see O'Bannon*, 2013 WL 5979327, at *5 (citing *Hanlon*, 150 F.3d at 1020). The Named Plaintiffs do not have any conflicts of interest with the other class members. To the contrary, their interests—proving that Defendants' restraints damaged the class—squarely align with other class members. Further, the Named Plaintiffs have devoted substantial time to conferring with counsel about the facts and strategy of the case and have shown that they will prosecute the matter vigorously. *See* Declaration of Chuba Hubbard ISO Pls.' Mot. for Class Certification (ECF No. 149-4) ¶ 8; Declaration of Keira McCarrell ISO Pls.' Mot. for Class Certification (ECF No. 149-5) ¶ 10.

Plaintiffs' counsel likewise satisfy the adequacy requirement. In retaining Hagens Berman and Winston & Strawn, Plaintiffs employed firms with long track records of vigorously prosecuting complex antitrust actions like this one and who are well-versed in litigation against the Defendants. Both firms have previously been appointed lead class counsel for NCAA athletes by this Court in *Alston* and *House*—cases determined to be related to this one—and have had notable successes for the athlete classes in those litigations. *See* Related Case Order (ECF No. 144).

14

PLS.' MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 4:23-CV-01593-CW
2024-07-26 FINAL Hubbard - Mot. for Prelim. Approval of Settlement(2686187.1)docx 7/26/2024

5. **The Requirements of Rule 23(b)(3) Are Met**

A class is certifiable under Fed. R. Civ. P. 23(b)(3) where (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs meet both requirements.

a. **Common Questions of Fact or Law Predominate**

As this Court recently explained "'[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *In re College Athlete NIL Litig.*, 2023 WL 8372787, at *8 (N.D. Cal. Nov. 3, 2023) (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022)). This is particularly true here because "[f]or certification of a settlement-only class, a district court need not inquire whether the case, if tried, would present intractable management problems; instead, the focus is on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *See Maree v. Deutsche Lufthansa AG*, 2023 WL 2563914, at *6 (C.D. Cal. Feb. 13, 2023) (citation and internal quotation marks omitted).

Here, the issues—the existence of Section 1 liability as a result of Defendants' restraints on Academic Achievement Awards, antitrust injury, and damages—can be determined through evidence common to the class, and thus common issues predominate over individualized ones. Indeed, in granting plaintiffs' motion for class certification in *House*, the Court recently ruled that substantively similar issues are capable of class-wide resolution. *See In re College Athlete NIL Litig.*, 2023 WL 8372787, at *25.

b. **The Class Action Mechanism Is Superior to Any Other Method of Adjudication**

The superiority requirement "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. A class action is superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Maree*, 2023 WL 2563914, at *6 (quoting *Valentino v. Carter-Wallace, Inc.*, 97

1    F.3d 1227, 1234 (9th Cir. 1996)).

2           Class-action treatment is superior here because the damages sustained by each individual class

3    member are too low to incentivize them to litigate their claims individually. Expert Class Certification

4    Rpt. of Daniel A. Rascher (ECF No. 150-3) ¶¶ 8, 10, 88 (explaining that maximum Academic

5    Achievement Awards in the but-for world are $5,980 per academic year, and the damages period is

6    three years); *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d

7    1152, 1163 (9th Cir. 2001) (class treatment favored when there are class members for whom it would

8    be "uneconomical to litigate individually"); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

9    617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem

10   that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting

11   his or her rights.") (citation and internal quotation marks omitted). This is particularly true given how

12   expensive it would be for individual plaintiffs to marshal the information needed to prevail in complex

13   antitrust litigation against well-funded, sophisticated defendants like the NCAA and Power Five

14   Conferences. *See In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 1033 (C.D. Cal. 2015), *aff'd sub*

15   *nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), *and aff'd sub nom. Briseno*

16   *v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). In addition, Plaintiffs are not aware of any

17   other litigation in the country involving similar antitrust claims related to the NCAA or Conference

18   Defendants' Academic Achievement Award rules, further weighing in favor of class-action treatment.

19   *See* Fed. R. Civ. P. 23(b)(3)(B) (superiority requirement includes consideration of "the extent and

20   nature of any litigation concerning the controversy already begun by or against class members");

21   Procedural Guidance § 1(d). And, notably, Defendants do not oppose provisional certification for the

22   purpose of giving effect to the parties' Settlement.

23          For the foregoing reasons, the proposed class meets the requirements of Rule 23(a) and Rule

24   23(b)(3), and the Court should grant provisional certification for the purpose of effectuating the

25   proposed Settlement Agreement.

26   **C.      The Court Should Approve the Appointment of Class Counsel**

27          "An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Fed.

28   R. Civ. P. 23(c)(1)(B). Hagens Berman and Winston & Strawn have vigorously litigated this case and

have extensive experience handling complex class actions, including antitrust class actions involving athletes, and specifically antitrust class actions for athletes against the NCAA. *See* ECF No. 149-3 at Ex. 1 (Hagens Berman firm resume); ECF No. 149-2 at App. A (Winston & Strawn firm resume). They also have achieved notable success for the athlete classes they have represented against the NCAA in *Alston* and in *House*, two related actions. *See* Related Case Order (ECF No. 144). Hagens Berman and Winston & Strawn have worked tirelessly on behalf of the class of college athletes and will carry that work forward in resolving this case and effectuating the Settlement Agreement.

**D.    Proposed Schedule for Notice and Final Approval**

Rule 23(e)(1)(B) requires that a court approving a class action settlement "direct notice in a reasonable manner to all class members who would be bound by the proposal." For a Rule 23(b)(3) class, a court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those who adverse viewpoints to investigate and to come forward and be heard." *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B). As set forth above, this requirement is met. *See supra*, Section III.E.

Below is a proposed schedule for providing notice, filing objections or opting out, making claims, and holding a fairness hearing:

| Event | Deadline |
|---|---|
| Entry of Order Granting Preliminary Approval and Directing Notice | Subject to Court's Discretion |
| Notice Campaign and Claims Period Begins ("Notice Date") | October 1, 2024 or two weeks after Preliminary Approval Order (whichever is later) |
| Allocation Estimate Available | 60 Days after Notice Date |
| Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards | 60 Days after Notice Date |
| Exclusion and Objection Deadline | 105 Days after Notice Date |
| Motion for Final Approval and Response to Objections | 135 Days after Notice Date |

| Final Approval Hearing | At least 150 Days after Notice Date (at the convenience of the Court) |
|---|---|
| Claims Period Closes | 165 Days after Notice Date |

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court preliminarily approve the proposed Settlement Agreement, certify the proposed Settlement Class, appoint the undersigned counsel as Settlement Class Counsel, and approve the notice to be issued to the proposed Settlement Class in accordance with the notice plan.

Dated: July 26, 2024

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _/s/ Steve W. Berman_
     Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie A. Verdoia (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs and the Proposed Class*

Respectfully submitted,

WINSTON & STRAWN LLP

By: _/s/ Jeffrey L. Kessler_
     Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Sofia Arguello (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com
sarguello@winston.com
aidale@winston.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Counsel for Plaintiffs and the Proposed Class*

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the

3

filing of this document has been obtained from the signatories above.

4

By: */s/ Jeffrey L. Kessler*

5

JEFFREY L. KESSLER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pls.' Memo. of Points & Authorities ISO Mot. for Preliminary Approval of Settlement
No. 4:23-CV-01593-CW
2024-07-26 FINAL Hubbard - Mot. for Prelim. Approval of Settlement(2686187.1)docx 7/26/2024