Zachary Joseph Hoover
3058 Plumbrook Rd.
Maumee, OH 43537
ClaimID Nos.: 10119809701; 10274673401

Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

Re: *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919; *Hubbard v. National Collegiate Athletic Association, et. al.*, Case No. 4:23-CV-01593

To Whom it May Concern:

The purpose of this letter is to set forth my objections to the proposed settlements and distribution plans in the above-referenced litigations. I do so without withdrawing from participation in, nor waiving any rights to, compensation as provided in the proposed settlements and distribution plans. I also request the opportunity to speak at the Final Approval Hearing.

My objections to the proposed settlements and distribution plans are rooted in the fact that they **fail to appropriately categorize, and therefore preclude from fair compensation, non-scholarship power five football players within the damages classification**.

I was a non-scholarship football player on a power five football team for five years: at Iowa State University in 2016, and at the Ohio State University in 2017-2020. During that time, my level of involvement with, and value added to, the football team equaled and perhaps surpassed that of many scholarship players.

I was a full participant in fall camp (typically reserved for scholarship players and preferred walk-ons) for three seasons at Ohio State. I was listed as the #2 punter on the Ohio State depth chart for three seasons. Typically, the #2 player on any power five depth chart is a scholarship player. I started at punter in the 2020 Big Ten Championship Game, for which I was named the Special Teams Player of the Game. During my career at Ohio State, I earned the "Gold" standard athlete every quarter, in recognition for my dedication and work ethic. My name, image and likeness were utilized repeatedly in television broadcasts and social media posts.

The proposed settlements and distribution plans unfairly and arbitrarily draw a bright line distinction between scholarship and non-scholarship power five football players. Nowhere is this more apparent than in the distribution of broadcast NIL damages. The distribution plan provides for over **$2 billion** in settlement distribution to power five scholarship players, yet **completely excludes** non-scholarship players such as myself. As applied to me, this defies basic notions of fairness as I started—and was named player of the game—in a nationally-broadcast championship game. Many scholarship players never play a snap in a televised game, yet they are entitled to participate in the substantial monetary distribution.

The arbitrary nature of the scholarship/non-scholarship distinction is also readily apparent in the calculation of "compensation for athletic services" award. The distribution plan provides that **75%** of the allotted $600 million settlement for athletic services compensation is earmarked for power five football, recognizing that the *vast* majority of collegiate sport revenue is generated by power five football. However, non-scholarship football players such as myself are incorrectly placed in the "Additional Sports" category of recovery, which is completely barred from the 75% allocation and entitled to only 5% of the athletic services award. In essence, this categorization erroneously implies that non-scholarship players such as myself were not power five football participants at all.

To justify the 5% allocation, the plan states that "[t]he Additional Sports settlement class includes a set of athletic programs with distinctly lower revenue than the other classes, but also with teams that have a diverse range of revenues within the class." [Doc. 450-4, p.30.] As applied to me and similarly-situated players, this rationale is simply false. As an active participant and one-time starter on the Ohio State football team, I was not part of an "athletic program[] with distinctly lower revenue than the other classes;" rather, **I was a key component of perhaps the highest revenue-generating athletic program in the entire country.** Interestingly, the distribution plan itself recognizes the fallacy of lumping all "Additional Sports" participants into the same 5% recovery pool. For instance, "outliers" within the "Additional Sports" class are recognized for non-power five football and non-power five basketball on the basis that those programs generate more revenue than other programs within the class. Yet no accommodation is made for players, such as myself, that participated in the highest category of revenue generation.

As a non-scholarship player, I was not held to any lower of a standard than my teammates. Indeed, I was expected to work harder, get better grades, and earn my seat at the table every day. Many scholarship players had the luxury of coasting on past potential, or wilted under the pressure of unfulfilled expectations. I had to go "all-in" for the team with no guarantees, sacrificing time and money to live a dream and help the team. I can confidently say that I was a critical, valuable and necessary component of the multi-million dollar enterprise that constitutes Ohio State football, and am owed *fair* compensation. Draconian NCAA limitations on scholarship availability do not change that fact.

In light of the above, I respectfully object to the proposed settlements and distribution plans, and **specifically request that they be reconsidered to more adequately address the proper categorization of non-scholarship power five football players**. I would embrace the opportunity to speak at the Final Approval Hearing to further explain my objections, and answer any questions the Court may have.

Respectfully submitted,

Zachary Joseph Hoover

Z. Hoover
3058 Plumbrook Rd.
Maumee, OH 43537



Ronald V. Dellums Federal Bld. &
United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612