Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie A. Verdoia (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Class Counsel for Plaintiffs*

Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Sofia Arguello (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com
sarguello@winston.com
aidale@winston.com

Jeanifer E. Parsigian (SBN 289001)
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Class Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CHUBA HUBBARD and KEIRA MCCARRELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; ATLANTIC COAST CONFERENCE; THE BIG TEN CONFERENCE, INC.; THE BIG 12 CONFERENCE, INC.; PAC-12 CONFERENCE; and SOUTHEASTERN CONFERENCE,<br><br>Defendants. | Case No. 4:23-cv-01593-CW<br><br>**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL**<br><br>Date:       April 7, 2025<br>Time:       10:00 am<br>Judge:      Hon. Claudia Wilken<br>Courtroom:  TBD |

1

## NOTICE OF MOTION AND MOTION

2  PLEASE TAKE NOTICE that on April 7, 2025, at 10:00 a.m., in the courtroom of the

3  Honorable Claudia Wilken of the United States District Court of the Northern District of California,

4  located at 1301 Clay Street, Courtroom TBD, Oakland, CA 94612, Plaintiffs will and hereby do move

5  the Court for an order certifying the proposed settlement class and granting final approval to the class

6  action settlement with the National Collegiate Athletic Association ("NCAA"), The Big Ten

7  Conference, Inc., The Big 12 Conference, Inc., Southeastern Conference, Atlantic Coast Conference,

8  and Pac-12 Conference (collectively, "Defendants").

9  This motion is based on this notice of motion and motion, the accompanying memorandum

10  of points and authorities, the declarations in support of the motion, argument by counsel at the

11  hearing before this Court, any papers filed in reply, such oral and documentary evidence as may be

12  presented at the hearing of this motion, and all papers and records on file in this matter, including

13  the papers filed in support of the preliminary approval of this settlement.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 1

    A.    The Settlement Class........................................................................................2

    B.    Monetary Settlement Relief & Release of Claims ...........................................2

    C.    Distribution Plan ..............................................................................................2

    D.    Notice Is Estimated to Have Reached Over 98 Percent of Class Members..................3

    E.    Payment of Attorneys' Fees, Expenses and Service Awards ..........................5

III.  ARGUMENT ............................................................................................................... 5

    A.    The Settlement Class Should Be Certified.......................................................5

    B.    Notice Complied with Rule 23(c) and Due Process Requirements ..................6

    C.    The Settlement Merits Final Approval Under Fed. R. Civ. P. 23(e) ................7

        1.    The Settlement Is "Fair, Adequate, and Reasonable" for the Reasons Set Forth in the Preliminary Approval Motion............................... 8

        2.    The Settlement Class's Reaction to the Settlement Further Supports Final Approval ............................................................................... 10

            a.    Limited Opt-Outs ................................................................. 10

            b.    Limited Number of Objections ............................................ 11

            c.    No Objections to Fee Request or Service Awards............................ 13

IV.   CONCLUSION............................................................................................................ 14

ii

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL
No. 4:23-CV-01593-CW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ..........................................................................5, 7, 10

*Chun-Hoon v. McKee Foods Corp.,*
   716 F. Supp. 2d 848 (N.D. Cal. 2010) .........................................................................10

*Churchill Vill. LLC v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ..........................................................................................11

*In re Coll. Athlete NIL Litig.,*
   No. 4:20-cv-03919-CW (N.D. Cal.) ...................................................................... *passim*

*Cortez v. United Nat. Foods, Inc.,*
   2020 WL 13526688 (N.D. Cal. Feb. 6, 2020) ...............................................................13

*Custom LED, LLC v. eBay, Inc,*
   2014 WL 2916871 (N.D. Cal. June 24, 2014) ...............................................................10

*Edwards v. Andrews,*
   846 F. App'x 538 (9th Cir. 2021) .....................................................................................6

*Edwards v. Nat'l Milk Producers Fed'n,*
   2017 WL 3623734 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v.*
   *Andrews*, 846 F. App'x 538 (9th Cir. 2021) ...................................................................8

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ..........................................................................................7

*Harrison v. Bank of Am. Corp.,*
   2021 WL 5507175 (N.D. Cal. Nov. 24, 2021) ...............................................................9

*In re High-Tech Emp. Antitrust Litig.,*
   2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ...............................................................11

*Jarrell v. Amerigas Propane, Inc.,*
   2018 WL 1640055 (N.D. Cal. Apr. 5, 2018) ...............................................................13

*Kang v. Credit Bureau Connection, Inc.,*
   2023 WL 6811994 (E.D. Cal. Oct. 16, 2023) .................................................................8

*Knight v. Red Door Salons, Inc.,*
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....................................................................9

*Linney v. Cellular Alaska P'ship,*
  151 F.3d 1234 (9th Cir. 1998) ................................................................9

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) ..................................................................9

*Mendez v. C-Two Grp., Inc.,*
  2017 WL 2861118 (N.D. Cal. July 5, 2017)............................................6

*Naiman v. Total Merch. Servs., Inc.,*
  2019 WL 13194603 (N.D. Cal. Apr. 16, 2019) .......................................6

*In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litig.,*
  375 F. Supp. 3d 1058 (N.D. Cal. 2019), *aff'd sub nom. NCAA v. Alston,* 594 U.S.
  69 (2021)...............................................................................................2, 9

*Officers for Just. v. Civ. Serv. Comm'n of S.F.,*
  688 F.2d 615, 625 (9th Cir. 1982) ......................................................7, 8

*In re Omnivision Techs., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................10

*Pallas v. Pac. Bell,*
  1999 WL 1209495 (N.D. Cal. July 13, 1999) ........................................11

*Rodriguez v. W. Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) .........................................................7, 9, 11

*Rosado v. Ebay Inc.,*
  2016 WL 3401987 (N.D. Cal. June 21, 2016) ........................................13

*Sciortino v. PepsiCo, Inc.,*
  2016 WL 3519179 (N.D. Cal. June 28, 2016) ..........................................7

*Stewart v. Accurate Background, LLC,*
  2024 WL 1221968 (N.D. Cal. Mar. 20, 2024)...........................................8

*In re Syncor ERISA Litig.,*
  516 F.3d 1095 (9th Cir. 2008) ..................................................................7

*Van Bronkhorst v. Safeco Corp.,*
  529 F.2d 943 (9th Cir. 1976) ....................................................................7

*Wilson v. TE Connectivity Networks, Inc.,*
  2019 WL 4242939 (N.D. Cal. Sept. 6, 2019) ...........................................7

**Other Authorities**

*College Athlete Compensation,* Verita, https://www.collegeathletecompensation.com/ ....................7

iv

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL
No. 4:23-CV-01593-CW

Fed. R. Civ. P. 23 .................................................................................................... *passim*

*Procedural Guidance for Class Action Settlements*, U.S. District Court N.D. Cal.
    (modified Aug. 4, 2022), https://cand.uscourts.gov/forms/procedural-guidance-
    for-class-action-settlements/ ...........................................................................................10

v

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL
No. 4:23-cv-01593-CW

1

## I.   INTRODUCTION

Plaintiffs seek final approval of the *Hubbard* Stipulation and Settlement Agreement ("SA" or "Settlement") that provides for the payment of nearly two-thirds of the class's single damages claims after fees and expenses are deducted. The Settlement is the result of extensive litigation and arm's-length negotiations between the parties. Defendants agree to pay $200 million, which (after deduction of fees and expenses) will be disbursed to those college athletes who competed on a Division I athletic team at any time between April 1, 2019 and September 15, 2024, who would have likely earned Academic Achievement Awards (or "Alston Awards") absent Defendants' rules and agreements prohibiting such compensation. Once the proposed settlement is approved, each impacted class member that qualifies will be mailed a check or receive electronic payment via PayPal or Venmo. No claim form will be required for Power Five member school athletes, or any Big East member school athlete on rosters in men's and women's basketball teams during the relevant academic years. There is also no right of any reversion of settlement funds to Defendants.

The Settlement has received widespread support from members of the class. Since the Court's preliminary approval of the Settlement, the parties have effected the notice plan. Notice is estimated to have reached 98.1% of class members. As of March 3, 2025, of the 91,586 Power Five member school athletes and Big East member school basketball players who automatically qualify for distribution, 20,371 class members provided payment information. And an additional 59,542 athletes at other NCAA Division I member schools submitted claim forms. Out of a class of an estimated 286,797 persons, only 95 class members have opted out, and five objections have been submitted. None of the objections identify issues with the Settlement that warrant the denial of final approval.

The overwhelmingly positive reaction of the class confirms what this Court preliminarily determined: the *Hubbard* Settlement is demonstrably fair, reasonable, and adequate. It thus should be finally approved.

## II.   BACKGROUND

Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, Plaintiffs do not repeat the background and litigation history set forth in their Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Class

Representatives ("Fees Motion"), ECF No. 253, or in their Motion for Preliminary Approval of the Settlement ("Preliminary Approval Motion"), ECF No. 227. For the Court's convenience, Plaintiffs provide a brief summary of the terms of the Settlement below.

### A.    The Settlement Class

In granting preliminary approval, the Court certified a settlement class consisting of all current and former NCAA athletes who competed on a Division I athletic team between April 1, 2019 and September 15, 2024 who would have met the requirements for receiving an Academic Achievement Award under the criteria established by their schools for qualifying for such an Award (the "Settlement Class"). Revised Order Granting Pls.' Mot. for Prelim. Settlement Approval as Modified ("Prelim. Approval Order") at 2, ECF No. 244.

### B.    Monetary Settlement Relief & Release of Claims

The Settlement establishes a non-reversionary Settlement Fund of $200 million. This amounts to nearly two-thirds, or 63.9% of the Settlement Class's single damages claims at the time of settlement, as calculated by Plaintiffs' expert economist, Dr. Daniel Rascher. Decl. of Daniel A. Rascher in Supp. of Pls.' Mot. for Prelim. Settlement Approval ("Rascher Prelim. Approval Decl.") ¶ 9, ECF No. 227-5.

Once the Settlement is finally approved and effective, the Named Plaintiffs and Settlement Class members who have not opted out will release Defendants and their member institutions from all claims that were raised or could have been alleged in this litigation, with respect to all conduct prior to final approval of the Settlement, arising from Defendants' rules and agreements to prohibit NCAA member schools from offering cash Academic Achievement Awards, which were previously found to violate the federal antitrust laws. *See* SA ¶ 1(cc), ECF No. 227-3; *In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058 (N.D. Cal. 2019), *aff'd sub nom. NCAA v. Alston*, 594 U.S. 69 (2021).

### C.    Distribution Plan

The parties submitted a distribution plan (*see* Pls.' Suppl. Br. in Supp. of Prelim. Settlement Approval ("Prelim. Approval Suppl. Br.") at 1, ECF No. 242) which the Court preliminarily approved (*see* Prelim. Approval Order ¶ 7). Power Five member school athletes who were on rosters in all sports

2

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL
No. 4:23-cv-01593-CW

between the 2019-2022 academic years, and Big East member school athletes on rosters in men's and women's basketball teams between the 2019-2022 academic years, will receive direct pro rata payments without any need to file a claim form. *See* Prelim. Approval Suppl. Br. at 2. Athletes at other NCAA Division I member schools who submitted a claim form stating that their school offered Alston Awards, describing the criteria, and stating that the athlete met the criteria for entitlement to an Award between the 2019-2022 academic years will also receive a proportional distribution from the Gross Settlement Fund based on the years during which they competed. *Id.* While the Class includes athletes who competed in the 2022-2024 academic years, the damages period is limited to the 2019-2022 academic years, which is consistent with Plaintiffs' theory of liability and damages. *See* Rascher Prelim. Approval Decl. ¶¶ 8–12.

**D.    Notice Is Estimated to Have Reached Over 98 Percent of Class Members**

The notice plan approved by the Court was carried out by the notice administrator, Verita Global, LLC ("Verita"), pursuant to the Preliminary Approval Order. At a website developed and maintained by Verita, NCAA member institutions securely uploaded athlete data, including the names and last-known contact information (addresses and/or email addresses) of NCAA Division I athletes who met the criteria for the Settlement Class. *See* Decl. of Carla A. Peak Re: Notice Procedures ("Peak Decl.") (filed concurrently herewith) ¶¶ 5–7.

 If potential class members identified from that data had both an associated email address and USPS address, Verita disseminated notice to both addresses. On a rolling basis beginning on October 18, 2024, Verita caused notice to be sent to 372,838 email addresses and 91,084 postal addresses. *Id.* ¶¶ 15, 20.

Of the 455,202 email addresses provided by schools, 82,364 were found to be invalid email addresses, with 22,366 of the bounce-backs having a corresponding postal address that was not returned as undeliverable. *Id.* ¶¶ 18–19. Of the 91,084 notices sent via postal mail, 23,619 were returned as undeliverable. *Id.* ¶¶ 15, 17. These 23,619 undeliverable notices were associated with 13,448 unique Claim IDs. *Id.* ¶ 17. Through credit bureau and/or other public source databases, Verita performed address searches for these undeliverable notices and was able to find updated addresses for 867 class members. *Id.* Verita promptly re-mailed notices to the newly found addresses. *Id.*

In addition to direct email and postal notice, Verita conducted a targeted digital media campaign (*id.* ¶ 24), caused two press releases to be distributed nationally (*id.* ¶¶ 25, 27) and commenced an outreach effort the week of October 21, 2024 (*id.* ¶ 26). This organic outreach effort was performed via social media,[1] email, mail, and other methods to contact a variety of relevant influencers, current and former college athletes, athletes based on school athletic team rosters during the relevant class periods, player associations, conferences, sports groups, collegiate alumni associations, sports agents and sports marketers to solicit their assistance in sharing the settlement information and encourage claims filing. *Id.* ¶ 26. The targeted media campaign alone is estimated to have reached more than 80% of the Class in this Settlement. *Id.* ¶ 24. With the combined postcard and email notifications, approximately 90.2% class members received direct notice. *Id.* ¶ 22. When combined with the targeted digital media campaign, the total reach of the notice program is estimated to have reached over 98% of likely Settlement Class members. *Id.* ¶¶ 12, 41. The reach and frequency of exposure among the Settlement Class was further supplemented by the press release and extensive outreach effort. *Id.*

By October 18, 2024, Verita established a case-dedicated notice website where class members could obtain more information about the Settlement. *Id.* ¶ 28. Both the direct notice and paid media efforts directed individuals to this website. *See id.* By December 17, 2024, class members were able to view their damages allocation estimate on the website. *Id.* ¶ 30.

Verita worked with Class Counsel to provide basic information about the Settlement to class members. *Id.* ¶ 31. Class members were able to call a dedicated hotline toll-free and receive information and answers to questions about the Settlement from Verita staff. As of February 20, 2025, Verita had logged 5,069 calls. *Id.*

Verita's responsibilities also included processing any requests for exclusion and any claim form submissions. The deadline for exclusions and objections was January 31, 2025. As of March 3, 2025, out of a class of an estimated 286,797 persons, Verita has processed only 95 valid opt-out requests. *Id.* ¶¶ 10, 37. Five objections to the *Hubbard* Settlement were filed with the Court.[2]

---

[1] In certain instances, athletes received a personal outreach via LinkedIn. *Id.* ¶ 26 n.6.

[2] *See* Decl. of Jeffrey L. Kessler in Supp. of Pls.' Mot. for Final Settlement Approval and Omnibus

1   Additionally, as of March 3, 2025, of the 91,586 Power Five member school athletes and Big East

2   member school basketball players who automatically qualify for distribution, 20,371 class members

3   provided payment information. *Id.* ¶¶ 10, 34. An additional 59,542 Division I players submitted valid

4   claim forms. *Id.* ¶ 34. The average recovery payment for all *Hubbard* athletes is $1,240.55. *Id.* ¶ 36.

5   The average recovery payment for a Power Five athlete is $1,648.90, and the average recovery

6   payment for a non-Power Five athlete is $862.56. *Id.*

7       It is Verita's opinion that the notice plan, as implemented, comports with the requirements of

8   due process and Fed. R. Civ. P. 23. *Id.* ¶ 42. The notice plan provides for a robust direct notice program,

9   supplemented by an array of effective internet advertising efforts. *Id.* ¶¶ 11–32.

10       **E.    Payment of Attorneys' Fees, Expenses and Service Awards**

11       The Settlement provides that, subject to Court approval, Class Counsel are entitled to

12   reasonable attorneys' fees and costs to be paid from the Settlement Fund. SA ¶ 21. Class Counsel have

13   petitioned for an award of fees in the amount of $40 million, to be paid out over ten years, which

14   represents 20% of the Settlement Fund, plus reimbursement of reasonable costs in the amount of

15   $338,632.44. *See* Fees Mot. at 1. The Class Representatives have petitioned for service awards of

16   $50,000 each. *Id.* at 2. Class members have lodged no objections to these requests.

17       **III.    ARGUMENT**

18       Three steps must be satisfied for final approval of the Settlement. First, the Court must certify

19   the Settlement Class. Second, the Court must find that the Class received adequate notice under

20   Federal Rule of Civil Procedure 23(c)(2)(B). Third, the Court must decide whether the Settlement is

21   "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Prods. Liab.*

22   *Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). These requirements are all met.

23   **A.    The Settlement Class Should Be Certified**

24       In the order granting preliminary approval, this Court provisionally certified the Settlement

25   Class under Rule 23(b)(3). *See* Prelim. Approval Order ¶ 3. Because the same analysis applies here,

26   the Class should be finally certified for settlement purposes under Rule 23(e), for the reasons set forth

27   ───────────────────

28   Resp. to Objs. to Final Approval (filed concurrently herewith) ¶¶ 4–6 (explaining how the objections
    were identified).

1  in the Preliminary Approval Motion. *See* Prelim. Approval Mot. at 12–16.

2  **B.    Notice Complied with Rule 23(c) and Due Process Requirements**

3        A class action certified under Rule 23(b)(3) must satisfy the Rule 23(c)(2) notice provisions,

4  and upon settlement, the "court must direct notice in a reasonable manner to all class members who

5  would be bound by the proposal." Fed. R. Civ. P. 23(e)(l). Rule 23(c)(2) requires the "best notice that

6  is practicable under the circumstances, including individual notice" where feasible. Fed. R. Civ. P.

7  23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

8        This Court approved the proposed class notice and notice program. Prelim. Approval Order ¶¶

9  7–9. As described in Section II.D above, the notice administrator appointed by the Court (Verita)

10  implemented that program. Peak Decl. ¶¶ 11–32. An estimated 98.1% of class members received

11  notice (*id*. ¶¶ 12, 41), which far exceeds the constitutional requirements for notice. *See Edwards v.*

12  *Andrews*, 846 F. App'x 538, 539 (9th Cir. 2021) (holding that direct notice to "at least 75 percent of

13  the class" satisfied due process); *Naiman v. Total Merch. Servs., Inc.*, 2019 WL 13194603, at *8 (N.D.

14  Cal. Apr. 16, 2019) (holding that notice to "only eighty-three percent of the [s]ettlement [c]lass

15  members" satisfied due process); *Mendez v. C-Two Grp., Inc.*, 2017 WL 2861118, at *4 (N.D. Cal.

16  July 5, 2017) (granting final approval where direct notice was provided to 88% of class members).

17  The notice informed class members of the nature of the action, the terms of the proposed settlement,

18  the effect of the action and the release of claims, as well as class members' right to exclude themselves

19  from the action and their right to object to the proposed settlement. As ordered by this Court, Verita's

20  settlement website includes a summary of the Settlement and all the requirements ordered by this

21  Court.[3] This notice complies with the requirements of Rule 23 and due process.

22

23  [3] The website includes, *inter alia*, a full version of the Settlement, the Preliminary Approval Order, the Long Form Notice, and the Claim Form (in both an electronically fillable form and in a format that

24  may be downloaded and/or printed). Additionally, the website makes available the operative complaint and motions relating to preliminary approval and attorneys' fees and costs; the reports of Plaintiffs'

25  economics expert, Dr. Daniel Rascher, that have been filed in this action; information about how members of the Settlement Class can submit claim forms or supporting documentation to receive

26  payments under the Settlement; and information about the date, time, and location of the Fairness Hearing and instructions for how to access the Fairness Hearing remotely. Class Counsel shall ensure

27  that the settlement website is updated if the date, time, or instructions for remote access for the Fairness Hearing change. *See College Athlete Compensation*, Verita, https://www.collegeathletecompensation.

28  com/ (last visited Mar. 3, 2025).

**C.    The Settlement Merits Final Approval Under Fed. R. Civ. P. 23(e)**

The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," who "is exposed to the litigants and their strategies, positions, and proof." *Wilson v. TE Connectivity Networks, Inc*., 2019 WL 4242939, at *3 (N.D. Cal. Sept. 6, 2019) (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998)). But the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (internal quotation marks and citation omitted). "This is especially true in complex class action litigation." *Id.* There "is an overriding public interest in settling and quieting litigation," which holds "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In determining whether a settlement agreement is fair, adequate, and reasonable, the Court must weigh some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[4] and (8) the reaction of class members to the proposed settlement. *Bluetooth Headset*, 654 F.3d at 946. All of these factors support approval of the *Hubbard* Settlement.

---

[4] "Because there is no government participant in this case, this factor is inapplicable" and thus not addressed in this motion. *Sciortino v. PepsiCo, Inc.*, 2016 WL 3519179, at *6 (N.D. Cal. June 28, 2016).

7

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL
No. 4:23-CV-01593-CW

1.    **The Settlement Is "Fair, Adequate, and Reasonable" for the Reasons Set Forth in the Preliminary Approval Motion**

*The strength of Plaintiffs' case supports final approval*. In considering the strength of a plaintiff's case, the court should not reach "any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Officers for Just.*, 688 F.2d at 625. Instead, the court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *6 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021). The court's determination of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Just.*, 688 F.2d at 625 (internal citations and quotation marks omitted). Plaintiffs believe in the merits of the Class's claims but acknowledge that there are risks generally in litigation and specifically here given the challenges to class certification. *See* Prelim. Approval Mot. at 7. The Settlement is a result of the careful measurement of these risks.

*The risk, expense, complexity and duration of further litigation supports final approval*. "An antitrust class action is arguably the most complex action to prosecute. . . . The legal and factual issues involved are always numerous and uncertain in outcome." *Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *6 (internal citation and quotation marks omitted); *Kang v. Credit Bureau Connection, Inc.*, 2023 WL 6811994, at *4 (E.D. Cal. Oct. 16, 2023) ("There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned" that "weighs in favor of granting final approval.") (internal citation and quotation marks omitted). Here, the Class is not certified (other than provisionally for settlement purposes only), and obstacles to victory remain on the merits even if the Class were certified. *See Stewart v. Accurate Background, LLC*, 2024 WL 1221968, at *7–8 (N.D. Cal. Mar. 20, 2024) (risk of class not being certified or being decertified supports settlement approval); *see* Prelim. Approval Mot. at 7 (Defendants "vigorously opposed" class certification); Fees Mot. at 7, 14 (noting Defendants' intention to "vehemently oppose" any summary judgment motion filed by Plaintiffs). The Settlement brings significant relief to class members despite these ongoing risks and complexities. This factor strongly supports final approval of the Settlement.

*The amount offered in settlement supports final approval*. "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citation and quotation marks omitted). In this matter, Class Counsel negotiated a settlement of $200 million. The Settlement achieves an estimated 63.9% recovery of single damages claims. Rascher Prelim. Approval Decl. ¶ 9. This recovery amount strongly weighs in favor of granting final approval. *See, e.g.*, *Harrison v. Bank of Am. Corp.*, 2021 WL 5507175, at *3 (N.D. Cal. Nov. 24, 2021) (approving settlement that returned approximately 20% of total damages); *Rodriguez*, 563 F.3d at 965 (settlement returning 30% of estimated losses back to class members, that "the negotiated amount is fair and reasonable no matter how you slice it"); *see also* Prelim. Approval Mot. at 8–9.

*The extent of discovery completed and stage of proceedings supports final approval.* The extent of the discovery conducted and the stage of the litigation are both indicators of counsel's familiarity with the case and of their having sufficient information to make an informed decision. *E.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009). As explained in Plaintiffs' Fees Motion, the Settlement here is a continuation of Class Counsel's victory in *Alston* and much of the discovery there was used here. Fees Mot. at 27–28. In addition to the hundreds of thousands of documents that had been produced in *House* and *Grant-in-Aid*, Plaintiffs pursued and obtained significant new discovery from Defendants, including multiple rounds of voluminous data, on behalf of over 100 NCAA schools concerning their respective Alston Award policies, procedures, and recipients. *Id.* at 2–6; *see* Prelim. Approval Mot. at 7 (parties reached settlement "after over a year of litigation and discovery . . . and over five years after this Court rendered its decision in *Alston*"). This effort cannot be overstated, given the importance of detailed school-specific data required for Plaintiffs' econometric damages model. This "significant investigation, discovery and research" weighs in favor of finding that the Settlement was adequately informed. *See Mego Fin. Corp.*, 213 F.3d at 459.

*The experience and views of Class Counsel support approval*. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *See In re Omnivision Techs.*,

9

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL
No. 4:23-CV-01593-CW

*Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation and internal quotation marks omitted). Here, Plaintiffs' counsel—experienced antitrust lawyers with over a decade of experience successfully litigating against these Defendants on related issues—support the Settlement. *See* Prelim. Approval Mot. at 7 (the parties, including Class Counsel, "have extensively litigated these issues for years"); *id.* ("[C]ounsel for both sides are experienced and recognized nationally for competently handling large-scale, high-profile antitrust class action litigation, including [*Alston*].").

### 2. The Settlement Class's Reaction to the Settlement Further Supports Final Approval

Under Ninth Circuit law, the court should also weigh the settlement class's reaction to the settlement in determining whether to grant final approval. *See Bluetooth Headset*, 654 F.3d at 946; *Procedural Guidance for Class Action Settlements*, U.S. District Court N.D. Cal. (modified Aug. 4, 2022), https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (instructing that a motion for final approval should provide information about class members' response to the settlement). Here, class members have demonstrated an overwhelmingly positive response to the Settlement, as shown by the insignificant number of opt-outs and objections and the high volume of valid claim forms submitted to date.

### a. Limited Opt-Outs

Of the estimated 286,797 Settlement Class members, only 95 have opted out of the Settlement. Peak Decl. ¶¶ 10, 37. These opt-outs represent less than .04% of the estimated Class. 91,586 class members automatically qualify for distribution and, of those, over 20,371 have already confirmed their payment information on the settlement administrator's website. *Id.* ¶¶ 10, 34. More than 59,000 class members who do not qualify for automatic payment have submitted claim forms. *Id.* ¶ 34. Class members' overwhelming rate of participation in the Settlement strongly suggests satisfaction with the Settlement, further warranting final approval. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding that 4.86% opt-out rate "strongly support[ed]" final settlement approval); *Custom LED, LLC v. eBay, Inc*, 2014 WL 2916871, at *5 (N.D. Cal. June 24, 2014) (finding that .04% opt-out rate supported final settlement approval).

10

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL
No. 4:23-CV-01593-CW

b.    **Limited Number of Objections**

Only five class members objected to the Settlement. This represents .002% of all estimated class members. *See* Peak Decl. ¶ 10. Such a limited number of objections indicates that the Settlement is well-received by the Class and should be granted final approval. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement with 45 objections (.05%) out of 90,000 class members was proper); *Rodriguez*, 563 F.3d at 967 (holding that approval of a settlement with 54 objections (.01%) out of 376,301 class members was proper); *Pallas v. Pac. Bell*, 1999 WL 1209495, at *8 (N.D. Cal. July 13, 1999) (finding that 48 objections (0.5%) out of 10,000 class members supported final approval). And, as addressed below, each of the five objections is meritless.

Objector Charlotte North complains that her estimated damages payment does not include compensation for her freshman and sophomore years at Duke (2017-2019) and undervalues her academic achievement during the 2020-2022 academic years. Objection at 8, *House*, No. 4:20-cv-03919-CW (Jan. 31, 2025), ECF No. 638. But the damages class period only covers the 2019-2022 academic years, and the calculation is based on an objective formula developed by Plaintiffs' expert, which is fair to all class members and consistent with Plaintiffs' expert's damages estimates for each academic year. *See* Rascher Prelim. Approval Decl. ¶ 10 (explaining that the settlement amounts are allocated to academic years in proportion to distribution of damages estimate across the academic years); *id.* ¶ 12 (explaining that each class member will receive maximum annual value of Award ($5,980) for academic years in which they qualify or if that is impossible due to the number of claims, on a *pro rata* basis). It is well-established that it is reasonable and fair to allocate settlement damages among class members according to an objective formula developed in accordance with expert opinion. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015) (rejecting objection to settlement's damages allocation because the methodology relied on "a neutral and uniform metric . . . consistent with [p]laintiffs' expert opinions"). Objector Mai Nirundorn's complaint that her damages award is undervalued—despite admitting that she did not familiarize herself with the damages methodology (despite descriptions being made available on the settlement website), and that she received Alston Award payments in the amount of $5,980 per year for all four

11

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL
No. 4:23-cv-01593-CW

1    years she was at Georgia—is without merit for the same reason. Objection at 9, *House*, No. 4:20-cv-

2    03919-CW (Feb. 3, 2025), ECF No. 671. Her estimated allocation is based on the same objective

3    formula that applies to all class members and covers the 2021-22 academic season, as that is the only

4    year she participated in an eligible athletic program during the damages class period.

5            Objectors Sarah Brooke Baker and Katherine Ernst assert that it is an "error" that their damages

6    estimates do not include payments for the 2023-24 academic year. Objection at 2, *House*, No. 4:20-

7    cv-03919-CW (Jan. 31, 2025), ECF No. 665-1; Objection ("Ernst Objection") at 8, *House*, No. 4:20-

8    cv-03919-CW (Feb. 3, 2025), ECF No. 670. But this is no error—the Settlement compensates athletes

9    for years where they could not receive Academic Achievement Awards because of Defendants'

10   prohibition on such payments (*i.e.*, 2019-20, 2020-21, 2021-22). Under the Settlement, class members

11   do not receive compensation for subsequent seasons for precisely the reason Objector Ernst states: she

12   *already* received a full Academic Achievement Award for the 2023-24 academic year and thus was

13   not injured by Defendants' ban on Academic Achievement Awards during that season. *See* Ernst

14   Objection at 8.

15           Lastly, Objector Michael Mastrodicasa complains that the definition of the Settlement Class—

16   by requiring class members to meet their school's criteria for receiving an Academic Achievement

17   Award—unfairly restricts non-scholarship athletes from receiving payments. ECF No. 256 at 3.

18   Specifically, he objects that the variance across schools and/or conferences in their criteria for

19   eligibility of Academic Achievement Awards may lead to an unfair and inequitable distribution of

20   settlement proceeds by excluding certain individuals if they have not received full grant-in-aid

21   scholarships. For example, Mastrodicasa alleges that walk-on athletes are currently excluded from

22   earning Academic Achievement Awards per Big 12 Conference rules and/or the rules of certain Big

23   12 football teams, while most, if not all, SEC and Big 10 football teams do not have such limitations

24   or exclusions. *Id.* Objector Mastrodicasa thus asks that a change be made to the definition of the

25   Settlement Class to include all athletes, irrespective of scholarship status. *Id.* But this litigation did not

26   challenge the criteria for qualifying for an Alston Award. It instead sought to recover damages for

27   athletes who were harmed by Defendants' prohibition on Academic Achievement Awards that this

28   Court found to be anticompetitive in *Alston*. The Settlement Class definition is consistent with the

12

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND OMNIBUS RESPONSE TO OBJECTIONS TO FINAL APPROVAL
No. 4:23-CV-01593-CW

1  liability theory of the case—only athletes who would have received Academic Achievement Awards

2  absent Defendants' prohibition (and thus who were injured by Defendants' anticompetitive conduct)

3  are class members. Athletes who are ineligible to earn Alston Awards under the criteria established by

4  their schools or individual conferences suffered no injury from Defendants' anticompetitive rule, as

5  evidenced by the fact that these athletes are not receiving Academic Achievement Awards in the

6  absence of the anticompetitive rule. Accordingly, the exclusion of these athletes from the Settlement

7  Class is not "unfair" or "inequitable"; rather, it is consistent with Plaintiffs' theories of liability and

8  damages. In any event, Objector Mastrodicasa will receive a settlement payment because he competed

9  at a Power Five conference school during the damages period and thus is automatically eligible for

10  distribution.

11          **c.     No Objections to Fee Request or Service Awards**

12       No class members have objected to Class Counsel's requested fees and expenses or service

13  awards for the Named Plaintiffs. In addition to the reasons set forth in the Fees Motion, the lack of

14  objections to Class Counsel's requested fees further supports an award of the requested fees and

15  service awards. *See Cortez v. United Nat. Foods, Inc.*, 2020 WL 13526688, at *12 (N.D. Cal. Feb. 6,

16  2020); *Jarrell v. Amerigas Propane, Inc.*, 2018 WL 1640055, at *3 (N.D. Cal. Apr. 5, 2018)

17  (concluding that "a slight upward adjustment" to class counsel's requested fees was "warranted based

18  on . . . the fact that no class member has objected to the proposed award").

19       In sum, none of the objections identify issues with the Settlement that warrant the denial of

20  final approval. To the extent that any class members believed they are undercompensated by the

21  Settlement, they were free to opt out and pursue their own individual damages claims. *See Rosado v.*

22  *Ebay Inc.*, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016) (granting final settlement approval over

23  objector's contention "that he ha[d] suffered damages that [we]re significantly higher than the typical

24  class member" because the objector "should [have] opt[ed] out of the class and separately pursue[d]

25  his claims"). The dearth of both objections and opt-outs, especially in comparison to the high volume

26  of claim forms filed and payment information provided by class members, underscores class members'

27  satisfaction with the Settlement and further supports final approval.

28

1    **IV.    CONCLUSION**

2         For all the foregoing reasons, Plaintiffs respectfully request that this Court certify the

3    Settlement Class and grant final approval of the Settlement.

4

5    Dated: March 3, 2025                                      Respectfully submitted,

6    HAGENS BERMAN SOBOL SHAPIRO LLP            WINSTON & STRAWN LLP

7    By:    */s/ Steve W. Berman*                    By:    */s/ Jeffrey L. Kessler*

8         Steve W. Berman (*pro hac vice*)                  Jeffrey L. Kessler (*pro hac vice*)
     Emilee N. Sisco (*pro hac vice*)              David L. Greenspan (*pro hac vice*)

9    Stephanie A. Verdoia (*pro hac vice*)          Sofia Arguello (*pro hac vice*)
     HAGENS BERMAN SOBOL SHAPIRO LLP            Adam I. Dale (*pro hac vice*)

10   1301 Second Avenue, Suite 2000               WINSTON & STRAWN LLP
     Seattle, WA 98101                            200 Park Avenue

11   Telephone: (206) 623-7292                    New York, NY 10166-4193
     Facsimile: (206) 623-0594                    Telephone: (212) 294-4698

12   steve@hbsslaw.com                            Facsimile: (212) 294-4700
     emilees@hbsslaw.com                          jkessler@winston.com

13   stephaniev@hbsslaw.com                       dgreenspan@winston.com
                                                  sarguello@winston.com

14                                                aidale@winston.com
     Benjamin J. Siegel (SBN 256260)

15   HAGENS BERMAN SOBOL SHAPIRO LLP
     715 Hearst Avenue, Suite 300                 Jeanifer E. Parsigian (SBN 289001)

16   Berkeley, CA 94710                           WINSTON & STRAWN LLP
     Telephone: (510) 725-3000                    101 California Street, 21st Floor

17   Facsimile: (510) 725-3001                    San Francisco, CA 94111
     bens@hbsslaw.com                             Telephone: (415) 591-1000

18                                                Facsimile: (415) 591-1400
                                                  jparsigian@winston.com

19
     *Class Counsel for Plaintiffs*

20                                                *Class Counsel for Plaintiffs*

21

22

23

24

25

26

27

28

14

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the signatories above.

_/s/ Steve W. Berman_
STEVE W. BERMAN